Paul R. VIOTTI, Plaintiff,

v.

UNITED STATES AIR FORCE, Defendant.

Civ. A. No. 93–B–2529.

United States District Court, D. Colorado.

Oct. 18, 1995.

Matthew S. Feigenbaum, Kennedy & Christopher, P.C., Denver, CO, for plaintiff.

Henry L. Solano, United States Attorney, William G. Pharo, Assistant U.S. Attorney, Denver, CO, William Kraus, Captain, U.S. Air Force, General Litigation Div., Arlington, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant, United States Air Force (Air Force) moves for summary judgment on all of the claims of plaintiff, Paul R. Viotti (Viotti). Viotti cross-moves for partial summary judgment on claim one and seeks dismissal without prejudice of claim four. The motions are fully briefed and argued. I will grant the motions in part and deny them in part.

### I.

There is no genuine dispute about the following facts. In 1991, plaintiff, a Colonel in the Air Force with 25 years of service, was the acting head of the political science department at the United States Air Force Academy in Colorado Springs, Colorado. In March, 1991, Viotti was re-appointed as a senior tenure professor for four years (Exh. 2) based in part on his excellent officer evaluation reports. (Exh. 3).

Brigadier General Ruben Cubero (Cubero) was appointed Dean of the Faculty at the Air Force Academy in July, 1991. (Exh. 1 p. 1). In August, 1991, Cubero was informed that the Air Force Academy Inspector General (IG) had received a fraud, waste and abuse complaint against Colonel Viotti in connection with his official travel. (Exh. A ¶ 1). Cubero assigned Colonel Patrick English (English) "to conduct an inquiry into the facts and circumstances surrounding [the] complaint of fraud, waste and abuse" made against Viotti in connection with temporary duty assignment travel (TDY). (Exh. B ¶ 1). After a five week investigation during which English interviewed numerous witnesses, in-

cluding Viotti, English submitted his final report of inquiry (ROI) to Cubero on October 31, 1991. (Exh. B ¶ 2). The ROI included transcripts of all interviews and copies of Viotti's government TDY travel documents. (Exh. B ¶¶ 3, 5). Based on the ROI, the allegations against Viotti of fraud, waste and abuse were not pursued any further and no criminal charges were filed against Viotti. According to Cubero, however, the ROI confirmed his "independent belief" that there were serious morale problems in the political science department. (Exh. A ¶ 2). Cubero attributed the department's problems to what he described as Viotti's "lack of leadership and judgment." *Id.* Cubero based this conclusion on the ROI and on information he had received "independently [ ] from other Air Force officers that there were serious organizational and management problems in the political science department, which were attributed to Colonel Viotti's lack of leadership." (Exh. A ¶ 4). During the course of the inquiry, Viotti and Cubero discussed the allegations. Viotti also submitted two letters in rebuttal to the inquiry. (Exh. B Att. 1 and 2).

In November, 1991, Cubero decided to remove Viotti as acting head of the political science department because he "had lost confidence in his judgement and leadership ability." (Exh. A ¶ 4). Viotti was relieved effective January, 1992 after being allowed, at his request, to remain in the position until the end of the fall semester. (Exh. A ¶ 4). Viotti's new title was Special Assistant to the Dean of the Faculty at the same rank, pay, allowances and benefits. (Exh. A ¶ 4). On December 9, 1991, Cubero sent a recommendation to the Air Force Selective Early Retirement Board that Viotti be retired earlier than his mandatory retirement date because "Viotti had not shown an acceptable ability to command and lead...." Cubero also stated that he "removed [Viotti] from his position [as head of the political science department] as a result of his lack of leadership." Cubero recommended that "[Viotti] not be retained on active duty." (Exh.D Retention Recomm.).

Also in November, 1991, after meeting with Viotti, Cubero advised the political science department staff that he was removing Viotti as acting head of the department be-

cause he had lost confidence in Viotti's leadership ability. (Exh. A ¶ 8). Cubero also advised the other faculty department heads and division chiefs of his decision to remove Viotti and his reasons for the decision. (Exh. A ¶ 8). On December 10, 1991, Colonel Douglas Murray, the Vice–Dean, read a prepared statement to the entire political science department staff. Murray, who Cubero assigned to resume his prior duties as head of the political science department, discussed the actions taken and the reasons underlying Viotti's removal from his position. (Exh. A Att. 3).

On December 18, 1991, Viotti submitted a Privacy Act request for a copy of the ROI. (Exh. 1 and A). The Academy forwarded the file to the Deputy Inspector General of the Air Force. On May 4, 1992, the Air Force IG denied Viotti's request for a copy of the ROI citing § 552a(k)(2) of the Privacy Act. Viotti was provided with portions of the report that were releasable under the Freedom of Information Act (FOIA). (Gibson Decl. ¶ 2). On July 1, 1992, Viotti filed an appeal of the decision to withhold portions of the ROI. The appeal was sent to the Office of the Administrative Assistant, Office of the Secretary of the Air Force on October 30, 1992. (Gibson Decl. ¶ 5). The appeal was denied on behalf of the Secretary of the Air Force on December 9, 1992. On August 31, 1992, Viotti was retired from the Air Force approximately four years before his mandatory retirement date. (Exh. 1 ¶ 19).

Defendant filed a motion for summary judgment on Viotti's claims of: 1) improper denial of access to records; 5 U.S.C. § 552a(g)(1)(B); 2) failure to maintain accurate and complete records; 5 U.S.C. § 552a(g)(1)(C); 3) improper disclosure of records; 5 U.S.C. § 552a(g)(1)(D); and 4) request for amendment and/or expungement of records; 5 U.S.C. § 552a(g)(1)(A). Viotti filed a cross-motion on claim one. Viotti also seeks dismissal without prejudice of claim four.

## II.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992).

Once the moving party demonstrates an absence of evidence supporting an essential element of the plaintiff's claim, the burden shifts to the plaintiff to show that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. To satisfy this burden the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Mares,* 971 F.2d at 494.

Summary judgment is also appropriate where no reasonable jury could return a verdict for the claimant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Mares,* 971 F.2d at 494. However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

## III.

### Claim One

A. Improper denial of access to records: 5 U.S.C. § 552a(g)(1)(B)

The Privacy Act was written to promote "governmental respect for the privacy of citi-

zens by requiring all [government] agencies to observe certain constitutional rules in the computerization, collection, management, use, and disclosure of personal information about individuals." S.Rep. No. 93–1183, 93rd Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Adm.News 6916. "The Privacy Act establishes strict limitations on the compilation and dissemination of personal information about individuals." *Wren v. Harris,* 675 F.2d 1144, 1145 (10th Cir.1982).

■ The Privacy Act provides access and amendment to the records that each government agency maintains on an individual:

(1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, ... to review the record and have a copy made of all or any portion thereof in a form comprehensible to him ...;

(2) permit the individual to request amendment of a record pertaining to him and ...

(B) promptly, either—

(i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

(ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency....

5 U.S.C. § 552a(d).

However, the Privacy Act provides certain exemptions to the access and amendment provisions. 5 U.S.C. § 552a(d)(5) and (k). These exemptions include the "law enforcement" exemption which defendant asserts as the reason for not disclosing the entire ROI to Viotti. 5 U.S.C. § 552a(k)(2). Plaintiff argues that the information he seeks was not gathered for law enforcement purposes and, thus, should be disclosed to him.

■ 5 U.S.C. § 552a(k)(2) states:

Specific exemptions—the head of any agency may promulgate rules ... to ex-empt any system of records within the agency ... if the system of records is—

.    .    .    .    .

investigatory material complied for law enforcement purposes, ... *Provided, however, That* if any individual is denied any right, privilege, or benefit that he would otherwise be entitled (sic) by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence....

5 U.S.C. § 552a(k)(2) (emphasis in original). "Exemptions from the individual's right of access must be narrowly construed and their requirements must be strictly met." *Hernandez v. Alexander,* 671 F.2d 402, 407 (10th Cir.1982), *quoting Nemetz v. Department of the Treasury,* 446 F.Supp. 102, 105 (N.D.Ill. 1978). However, the "law enforcement" exemption is broad enough to allow exemption of investigations of employees made to decide if any administrative action should be taken against the employee. *Strang v. U.S. Arms Control and Disarmament Agency,* 864 F.2d 859, 862 (D.C.Cir.1989).

It is not genuinely disputed that the original purpose of the investigation of Viotti's travel records was a complaint to the IG of fraud, waste and abuse. The IG complaint was not sustained and no criminal charges were brought. However, there is no requirement under the "law enforcement" exception that criminal charges result from the investigation. The plain language of the exemption states that it applies to the purpose of the investigation, not to the result. *See* 5 U.S.C. § 552a(k)(2). Accordingly, I conclude, as a matter of law, that the ROI was compiled for a law enforcement purpose as stated in 5 U.S.C. § 552a(k)(2).

■ However, there is an exception to the exception. If Viotti was denied "any right, privilege or benefit [to which] he otherwise [was] entitled by Federal law, or for which he would otherwise [have been] eligible, as a result of the maintenance of" the ROI, the

ROI "shall be provided to [him]." *See* 5 U.S.C. § 552a(k)(2). The Air Force argues that this exception to the exemption does not apply because there is no right to military employment. *See Tennessee v. Dunlap,* 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976). Also, the Air Force argues that because Viotti maintained the same rank, salary, and benefits after he was removed from his position, he was not denied any right, privilege or benefit. Viotti argues that he was denied the benefits of remaining in his position as acting head of the department and remaining in the Air Force for four more years to maximum service of thirty years.

It is undisputed that active duty pay is greater than retirement pay. It is also not disputed that the retirement pay for serving twenty-six years is less than the retirement pay for serving thirty years. Moreover, by being selected for early retirement Viotti received retirement pay rather than the active duty pay he would have received if he had not been forced to retire early. Also, after he was selected for early retirement, Viotti asked that he be allowed to retire on February 1, 1993. General Cubero rejected this request claiming it would be "awkward." *See Exhibit 4.* As a result, Viotti was retired on August 31, 1992, six months before the original early retirement date.

Viotti submits years of exemplary Officer Efficiency Reports to support his argument that, but for the ROI, he would not have been removed from his position and referred for early retirement. (Exh. 10 and 11). Also, it is undisputed that in March, 1991 Viotti was reappointed as senior tenure professor for an additional four years. (Exh. 1, 10, 11).

Under these circumstances, I conclude there is no genuine dispute about the material fact that Viotti was forced to retire early. Moreover, there is no genuine dispute that Viotti's early retirement resulted in a loss of a benefit, right or privilege for which he was eligible—the loss of six months to four years of the difference between his active duty pay and retirement pay. Also, over his life expectancy, Viotti will lose the difference in pay between the amount of his retirement pay for twenty-six years of active duty versus thirty years of active duty. Thus, on the undisputed facts, as a matter of law, based on the ROI, Viotti lost benefits, rights, and privileges for which he was eligible. Accordingly, despite the fact that the ROI was prepared pursuant to a law enforcement investigation, Viotti is nonetheless entitled to a copy of the unredacted ROI. 5 U.S.C. § 552a(k).

Viotti may obtain a copy of the unredacted ROI. However, he is not entitled to information in the ROI that would reveal the identity of any source who gave information to the government under an express promise that the identity of the source would be held in confidence. 5 U.S.C. § 552a(k)(2); 32 C.F.R. Ch. VII, § 806b.13(12).

■ According to the Air Force, there is one witness who requested confidentiality because of fears of reprisal. (Def.Br.Partial S.J.Mtn. p. 6); (Exh. E ¶ 11). Viotti states, and I agree, the statutory language requires an "express" promise of confidentiality to invoke this exception. Contrary to the Air Force's assertions in its brief, Master Sergeant Schilling's declaration does not state that the source requested confidentiality, expressly or even implicitly. (Pltf.Exh. 12). Rather, according to Schilling, the witness merely expressed a "fear of reprisal." (Pltf.Exh. 12 ¶ 11).

General allegations of a promise do not satisfy the "express" promise requirement of § 552a(k)(2). *Londrigan v. F.B.I.,* 670 F.2d 1164, 1170 (D.C.Cir.1981). Thus, *a fortiori,* Schilling's declaration is insufficient to invoke this exception.

**B. Freedom of Information Act (FOIA)**

■ Defendant contends that, pursuant to Air Force policy, it also processed Viotti's request under the FOIA. Pursuant to the FOIA, Viotti was sent a redacted version of the ROI. Viotti states that this was improper as it was not Air Force policy. AFR 12–35, 18.a (Exh. 13). However, somewhat inexplicably, he argues he is "still entitled to access to these records under FOIA." *Martin v. Office of Special Counsel, Merit Systems Protection Bd.,* 819 F.2d 1181, 1184 (D.C.Cir.1987). (Pltf.Cross–Motion p. 14).

■ Requests for information and documents held by the government can be processed under the Privacy Act or the FOIA. If the records are accessible under the Privacy Act, the exemptions from disclosure in the FOIA are inapplicable. *Wren v. Harris,* 675 F.2d 1144, 1147 (10th Cir.1982); *See Nemetz v. Department of the Treasury,* 446 F.Supp. 102, 105 (N.D.Ill.1978); 5 U.S.C. § 552a(q). Having concluded that Viotti is entitled to access of the ROI pursuant to the Privacy Act, I further conclude that the FOIA is not applicable. Accordingly, as a matter of law, Viotti is entitled to a copy of the unredacted ROI.

## IV.

Claim two—Failure to maintain accurate and complete records: 5 U.S.C. § 552a(g)(1)(C)

Viotti alleges in his second claim that the ROI is inaccurate and incomplete. He alleges that the results of the inquiry were used to remove him from his faculty and administrative position with the Air Force and to recommend his early retirement. (Amended Complaint ¶¶ 13, 27, 28).

■ To prevail on this claim Viotti must show: 1) an inaccurate record; 2) proximately caused; 3) an adverse determination concerning him; and 4) the government acted intentionally and willfully. *Hubbard v. EPA,* 809 F.2d 1, 4–6 (D.C.Cir.1986).

■ In order to avoid summary judgment, Viotti must set forth facts showing that the Air Force relied, in whole or in part, upon inaccuracies in the ROI in removing him from his position or in retiring him early. *See Hubbard,* 809 F.2d at 6. As of yet, Viotti has not received the unredacted ROI pursuant to this Order. It is premature to address the summary judgment motion on this claim. I will defer ruling on the motion for summary judgment on claim two pending Viotti's receipt and review of the ROI.

## V.

Claim three—Improper disclosure of records: 5 U.S.C. § 552a(g)(1)(D)

Viotti next claims that the Air Force violated 5 U.S.C. § 552a(b) by disclosing improperly to third parties the results of the ROI and information contained in it. (Amended Complaint ¶¶ 14, 15, 33). Defendant seeks summary judgment on this claim.

### A. Disclosures by General Cubero

■ General Cubero disclosed to the political science department staff that he was removing Viotti as acting head of the political science department because he had lost confidence in Viotti's leadership of the department. However, disclosure is permitted "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). This "need to know" disclosure exception encompasses personnel matters. Moreover, the agency maintaining the record is the Air Force. *Hernandez v. Alexander,* 671 F.2d at 410. As a matter of law, any such disclosure by Cubero to officers and staff at the Academy was not improper. *Id.* at 410.

### B. Disclosures by Colonel Murray

■ After removing Viotti as acting head of the political science department, General Cubero reassigned Colonel Murray to his previous position as head of the department. On December 10, 1992, Murray read a prepared statement to the political science department staff which stated that Viotti had been removed based on concerns about his leadership. Like the disclosures by Cubero, Murray's statements were proper as intra-agency disclosures to staff with a "need to know" pursuant to 5 U.S.C. § 552a(b)(1). Moreover, the staff had already been informed properly by Cubero about the personnel decision and the reasons behind it. There is no "disclosure" if the communication is to a person already aware of the information. Thus, as a matter of law, a disclosure did not occur. *Hollis v. United States Dept. of Army,* 856 F.2d 1541, 1545 (D.C.Cir.1988).

### C. Disclosures by Colonel English

Viotti contends that Colonel English, the investigating officer, asked various witnesses

several questions on the order of the following:

1. would the witness be surprised if Viotti had 150 days of TDY and 56 travel claims during an 18 month period;

2. did the witness think 150 days of TDY and 56 travel claims by Viotti during an 18 month period sounded excessive.

Defendant asserts, and the record reflects, that these disclosures by English are not contained in Viotti's amended complaint. (Amended Complaint). Also, I do not have before me a motion to amend the complaint to include these allegations. Consequently, defendant's motion for summary judgment on disclosures by Colonel English is not properly before me.

**D. Disclosures to the Colorado Springs Gazette Telegraph**

■ Plaintiff contends that some unknown Air Force employee violated the Privacy Act by disclosing information from the ROI to a newspaper reporter. (Amended Complaint). Viotti must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence to establish the need for a trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Mares*, 971 F.2d at 494. Plaintiff has not met this burden. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Accordingly, I will grant defendant's motion for summary judgment on plaintiff's claim for disclosure to the Gazette Telegraph by an unidentified person.

Defendant admits that Colonel David Wallace responded to an inquiry from the Colorado Springs Gazette Telegraph. (See Def. Exh. C). Defendant also does not dispute that Wallace informed the newspaper that Viotti's leadership was not up to Academy and Air Force standards and his superiors had lost confidence in his leadership. However, Wallace states that "[t]he information contained in my response was based on personal knowledge that was obtained from sources other than a government record. I have never reviewed the report of inquiry referenced in my response to [the Gazette Telegraph]." (Wallace Aff. p. 2).

■ The Privacy Act covers more than the mere physical dissemination of rec-

ords. However, it does not necessarily cover disclosure of information merely because the information happens to be contained in the records. Rather, where, as here, no statutory exception applies, the Privacy Act prohibits its nonconsensual disclosure of any information retrieved from an agency system of protected records. *Thomas v. United States Dept. of Energy*, 719 F.2d 342, 345 (10th Cir.1983). Section 552a(b) contemplates a "system of records" as being the direct or indirect source of the information disclosed. *Id.*

Viotti was obligated to come forward with some evidence indicating the existence of a triable issue of fact as to the identity of the "indirect" source of Wallace's disclosure to the newspaper. The unsupported allegations in Viotti's pleadings and briefs are, as a matter of law, insufficient to meet this burden. *Thomas*, 719 F.2d at 344.

Accordingly, it is ORDERED that:

1. defendant's motion for summary judgment on claim one, improper denial of access to records, is DENIED;

2. plaintiff's motion for summary judgment on claim one is GRANTED;

3. to secure compliance with part III of this Order, by November 18, 1995, defendant shall file with the court the identity of the undisclosed witness and, by the same date defendant shall provide to plaintiff and the court a complete and unredacted copy of the ROI;

4. defendant's motion for summary judgment on claim two, failure to maintain accurate and complete records, is DEFERRED pending further proceedings;

5. defendant's motion for summary judgment on claim three, improper disclosure of records, is GRANTED;

6. plaintiff's motion to dismiss claim four, request for amendment and/or expungement of records; is GRANTED without prejudice.

7. defendant's motion for summary judgment on claim four is DENIED as moot.