**Fayez B. HANNA, Plaintiff,**

**v.**

**Alexis HERMAN, Secretary of Labor, Defendant.**

**No. CIV.A. 98–03094 (ESH).**

United States District Court, District of Columbia.

Nov. 13, 2000.

William H. Schladt, Ward & Klein, Chartered, Gaithersburg, MD, for Plaintiff.

Mark E. Nagle, Wilma A. Lewis, Fred E. Haynes, U.S. Attorney's Office, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

HUVELLE, District Judge.

Before the Court is defendant Secretary of Labor Alexis Herman's motion for summary judgment, plaintiff Fayez Hanna's opposition thereto and cross motion for judgment, defendant's reply, and plaintiff's response.[1] The issues before the Court are twofold: whether defendant's demotion of plaintiff from GM–15 to GS–14 was discriminatory or retaliatory and whether the decision of the Merit System Protection

Board (MSPB) affirming his demotion was based on a misinterpretation of the law and the facts. Upon consideration of these pleadings and the record herein, the Court concludes that defendant's motion should be granted and summary judgment on all counts should be entered on behalf of defendant.

## BACKGROUND

Plaintiff is a former employee of the Occupational Safety and Health Administration (OSHA), which is part of the Department of Labor.[2] He began working at OSHA in 1976. In 1978, he was promoted from a GS–13 to a GM–15 to join the Directorate of Health Standards Programs as Director of the Office of Toxic Substances. In 1993, he was working at the Directorate of Health Standards Programs as Director of the Office of Risk Reduction Technology, at a GM–15 level. From 1986 until 1993, plaintiff was supervised by Charles E. Adkins, the Director of the Directorate of Health Standards.

On September 8, 1993, Adkins issued a memorandum to plaintiff, directing plaintiff to assign Kenneth Stevanus, one of the employees in plaintiff's division, to serve on a panel. The panel to which Stevanus was to be assigned was to review bids by contractors to provide technical service to OSHA's Office of Regulatory Analysis. Plaintiff refused to make the assignment and so stated in a memorandum to Adkins. Adkins then sent another memorandum to plaintiff, explaining the Stevanus assignment in greater detail and warning plaintiff that any further refusal to make the assignment would be considered to be insubordination. Plaintiff responded by send-

---

1. Although plaintiff filed a pleading entitled "Plaintiff's Motion for Summary Judgment and Cross Motion for Judgment," plaintiff now appears to claim that the pleading was intended as an Opposition to Defendant's Motion for Summary Judgment as to the discrimination claim and a Motion for Summary Judgment as to his appeal of the decision of the Merit System Protection Board. (*See* Pl. Response to Def. Reply (Pl.Response)).

2. Plaintiff was an employee at OSHA when this lawsuit was filed but was removed from his position on August 20, 1999, for failing to cooperate in an investigative interview conducted by the Office of the Inspector General of the Department of Labor. That removal is not challenged in this lawsuit.

ing Adkins another memorandum restating his refusal to make the assignment. Adkins confronted plaintiff in his office, at which time plaintiff reconfirmed that he was not going to make the assignment and Adkins again informed plaintiff that he considered such behavior to constitute insubordination.

On September 17, 1993, Adkins proposed that plaintiff be suspended for fourteen days for refusal to comply with proper orders, defiance of authority, and insubordination. On September 23, 1993, plaintiff issued a memorandum to the employees under his supervision. In this memorandum, he stated that he "did not concede to Charles Adkin's inappropriate order" and that he "will not respond to, or implement any dictated unreasonable and unfair managerial practices." (Mem. in Supp. of Def. Mot. for Summ. Judg. (Def.Mot.) Exh. 3 at 2). On October 15, 1993, Adkins sent plaintiff a memorandum proposing his demotion from GM–15 to GS–13. The reasons given for the proposed demotion were: 1) repeated and deliberate refusal to comply with proper orders, defiance of authority, and insubordination; and 2) misconduct in exercising management and supervisory duties, undermining management authority, and inappropriate conduct in dealing with subordinate employees.

After the demotion was proposed, plaintiff amended a discrimination complaint that was already pending in the U.S. District Court for the District of Columbia (*Hanna v. Reich,* Civil Action 94–226(GK)), alleging that the demotion proposal was made in retaliation for his having filed a discrimination complaint. That complaint alleged disability discrimination for being denied permission to smoke in his office, and alleged discrimination based on national origin for receiving a one-day suspension, not receiving a $500 merit pay bonus in 1989, not having 152 hours of annual leave restored in 1990, and not receiving an "Outstanding" rating in 1991. That complaint also alleged the defendant retaliated against plaintiff when his supervisor informed the Department of Labor's Office of Workers' Compensation Program about his prior employment discrimination complaint, when plaintiff's 14–day suspension was proposed and issued in 1993, when plaintiff's demotion was proposed in October 1993, and when he was detailed to a special assignment in October 1993. In 1995, a jury trial was held on the retaliation claims, while the discrimination claims were tried to Judge Gladys Kessler. Ultimately, the jury held that defendant had retaliated against plaintiff when his supervisor informed the Department of Labor's Office of Workers' Compensation Program about his prior employment discrimination complaint and awarded plaintiff $15,000 in compensatory damages, but found no retaliation by defendant for any other claims before it, including the claim of retaliation for proposing plaintiff's demotion. Judge Kessler ruled that the defendant had discriminated against plaintiff in failing to pay the merit bonus, failing to restore his annual leave, and failing to give him an "Outstanding" rating. Plaintiff's disability discrimination claim was dismissed.

Plaintiff sought to challenge the demotion through the civil service system. On February 12, 1996, plaintiff presented his case to Gregory Watchman, who was Deputy Assistant Secretary of Labor for OSHA at the time. In addition to making an oral presentation, plaintiff submitted a written statement and a supplemental memorandum. On July 30, 1996, Watchman upheld the proposal to demote plaintiff, but reduced the penalty by demoting plaintiff from GM–15 to GS–14 rather than to GS–13. Watchman upheld reason one of the demotion proposal in part and reason two in full, finding that disciplinary action—the 14–day suspension—had already been taken against plaintiff for his refusal to comply with the order to make the Stevanus assignment and thus the demotion could not be imposed as additional punishment. Plaintiff's demotion was effective as of July 31, 1996.

Plaintiff appealed his demotion to the MSPB. A hearing was held on March 13, 1997, and on April 11, 1997, the Administrative Law Judge (ALJ) issued a decision upholding Watchman's demotion decision and finding that plaintiff's conduct constituted defiance of authority and insubordination and that he engaged in misconduct in exercising his management supervisory duties, undermining management authority, and inappropriate conduct in dealing with subordinate employees. The ALJ further found that the demotion promoted the efficiency of the service of the agency and was a reasonable penalty for the conduct in question, and she rejected a claim of reprisal for whistleblowing.

Plaintiff then appealed to the MSPB. The MSPB upheld plaintiff's demotion, sustaining the charge of misconduct in exercising management and supervisor duties, undermining management authority, and inappropriate conduct in dealing with subordinate employees, but rejecting the charge of defiance of authority and insubordination. The MSPB also found that plaintiff failed to establish discrimination or that the demotion was in reprisal for whistleblowing. Furthermore, the MSPB found the penalty to be reasonable. Plaintiff has now brought this complaint seeking a reversal of the MSPB's decision.

## ANALYSIS

### Standard of Review

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of*

*Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989).

Where the case before the MSPB involves an appeal from an ordinary personnel action as well as allegations that the act was discriminatory, in other words a "mixed case," the Board "must sustain an Agency's decision ... if that decision is supported by a preponderance of the evidence." *Murray v. U.S. Dept. of Justice*, 821 F.Supp. 94, 101 (E.D.N.Y.1993). The court must review the discrimination claim de novo, 5 U.S.C. § 7703(c), and the non-discrimination claim on the administrative record. *Barnes v. Small*, 840 F.2d 972, 979 (D.C.Cir.1988).

### I. Discrimination Claim

██ In a "disparate treatment" case where the plaintiff cannot produce direct evidence of discriminatory or retaliatory animus, the three-part "shifting burdens" test established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies and requires as follows:

> First, the plaintiff has the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." [*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a mere pretext for discrimination. *Id.* at 804, 93 S.Ct. 1817.

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To satisfy the first prong of the test in a case alleging the discriminatory application of discipline, plaintiff must demonstrate that (1) he is a

member of a protected class; (2) he was similarly situated to an employee who was not a member of the protected class; and (3) he was treated differently from the similarly situated employee. *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir.1999). To establish a prima facie case of retaliation, "the plaintiff must show 1) that [ ]he engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action against h[im]; and 3) that a causal connection existed between the two." *Carney v. American University*, 151 F.3d 1090, 1095 (D.C.Cir.1998).

▆▆▆ The burden then shifts to the employer to "simply explain[ ] what he has done or produce evidence of legitimate nondiscriminatory reasons." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden on defendant at this stage is merely one of articulation. *Fischbach v. District of Columbia Department of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir.1996). If the employer meets its burden of production, the presumption of discrimination or retaliation is rebutted, and the plaintiff bears the burden of showing that the legitimate reasons offered by the defendant were not the true reasons, but were merely pretextual. *See Aka v. Washington Hospital Center*, 156 F.3d 1284, 1288–89 (D.C.Cir.1998). In the burden-shifting context, "pretext" is shown not through evidence that an employer's proffered reasons are inaccurate or incorrect, but through evidence that an employer's proffered reasons are false or a lie. *Id.* at 1289 n. 3; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000). The burden of persuasion that the employer intentionally discriminated against the employee lies with the plaintiff. *Fischbach*, 86 F.3d at 1182 (citing *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). *See also Aka*, 156 F.3d at 1289; *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1554–55 (D.C.Cir. 1997).

Plaintiff's claims appear to challenge both the agency's proposal to demote him, made by Adkins, as well as the decision to demote him, made by Watchman. (*See* Pl.'s Opp. to Def.'s Mot. for Summ. Judg. and Cross Mot. for Judg. (Pl.Opp.) at 17). Plaintiff also appears to claim that the actions taken against him were both discriminatory and retaliatory. (*See* Compl. ¶ 26).

In making his decision to demote plaintiff, Watchman was faced with the question of whether to uphold the demotion proposal already made by Adkins. (Def.Mot.Exh. 8). Adkins had given two reasons for the proposal in his letter to plaintiff: "(1) Repeated and deliberate refusal to comply with proper orders, defiance of authority, and insubordination, and (2) Misconduct in exercising your management and supervisory duties, undermining management authority, and inappropriate conduct in dealing with subordinate employees." (Def. Mot. Exh. 4 at 2). In upholding Adkins' proposal, Watchman found that the doctrines of res judicata and/or collateral estoppel may preclude plaintiff from characterizing the proposed demotion as discriminatory because plaintiff had "a full opportunity to assert and establish such an allegation" at the trial before Judge Kessler, which had occurred prior to Watchman's issuance of his decision. (Def. Mot. Exh. 8 at 7 fn. 9). He also noted that the jury in the case before Judge Kessler had concluded that the demotion proposal was not retaliatory. *Id.* at 7. He nevertheless rejected plaintiff's challenge to the demotion proposal on the merits, sustaining Reason 1 of the proposal in part and Reason 2 in whole. The part of Reason 1 that Watchman did not sustain was the part based on refusal to comply with proper orders, since plaintiff had already been disciplined for refusing to assign Stevanus to the panel with a 14–day suspension. *Id.* at 3.

The ALJ affirmed Watchman's demotion decision. (Def.Mot.Exh. 9). In doing so, she held that res judicata applied to the issue

of whether the agency discriminated against the plaintiff when it issued the notice of proposed demotion. *Id.* at 1 n. 1. At the prehearing conference on March 3, 1997, the administrative judge excluded six of plaintiff's witnesses after concluding that their testimony did not appear to be relevant. (AR at 90). The ALJ also found that plaintiff failed to establish a prima facie case of discrimination by failing to identify any similarly situated individual not a member of his protected group who received different treatment. Def. Mot. Exh. 9 at 9.

On appeal the MSPB upheld the demotion decision, although it disagreed with the ALJ's finding that res judicata precluded relitigation of the demotion issue, since, according to the MSPB, "the cause of action in the two cases, a proposal and a demotion, is not the same." (Def.Mot.Exh. 10, ¶ 12). Nonetheless, the MSPB rejected plaintiff's argument that he was precluded from proving discrimination by the ALJ's ruling that excluded six of his proposed witnesses on the grounds that plaintiff had failed to preserve his objection to the ALJ's ruling regarding these witnesses. Moreover, the MSPB found that as to the issue of the demotion, as opposed to the proposed demotion, the ALJ's ruling did not prevent plaintiff from presenting evidence of discrimination, and therefore, there was no prejudice to the plaintiff from the ALJ's exclusion of any of plaintiff's witnesses. *Id.* ¶ 13.[3]

 To the extent that plaintiff continues to argue that the demotion proposal was either discriminatory or retaliatory, the proposed demotion was the subject of the jury's verdict in 1995, and therefore, it cannot be relitigated here. The doctrine of res judicata applies "not only as to every matter which was offered and received to sustain or defeat the claim ... but as to any other admissible matter which might have been offered for that purpose." *Nevada v. U.S.*, 463 U.S. 110, 129–30, 103 S.Ct.

2906, 77 L.Ed.2d 509 (1983)(quoting *Cromwell v. Sac County*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). Consequently, plaintiff cannot now bring a claim that the proposal to demote him was discriminatory, because such a claim could have been brought in the federal court action challenging the proposal to demote on retaliation grounds. Moreover, the jury rejected plaintiff's claim of retaliation. Thus, the issue of whether the proposal to demote was the result of an unlawful motive on the part of the proposing official, Adkins, may not be relitigated here.

Since the jury found no unlawful motive for the proposed demotion of the plaintiff, his incessant reliance on Judge Kessler's findings of discrimination as to other actions unrelated to the proposed demotion and her findings regarding the testimony of Adkins and Martonik have absolutely no relevance to the issue before this Court. The plaintiff is bound by the jury's finding that the demotion proposal was not the result of a discriminatory or retaliatory motive and whether plaintiff was the victim of discrimination in some other aspect of his employment does not serve to negate the res judicata effect of the jury's verdict.

 To the extent that plaintiff argues on appeal that the demotion decision by Watchman is not barred by the doctrine of res judicata, the Court agrees, for as recognized by the MPSB, the demotion decision by Watchman is a separate action from Adkins' proposal to demote the plaintiff. (Def. Mot. Exh. 10 ¶ 12). Obviously, the demotion had not yet occurred at the time of the 1995 trial, and thus, it could not have been the subject of a court challenge.

 Nonetheless, there is no evidence before this Court upon which to reverse the MSPB's decision upholding the demotion. Again, it serves no purpose for plaintiff to point to Judge Kessler's findings that the agency discriminated against him

---

3. In particular, the MSPB noted that the deciding official (Watchman) was questioned

during the hearing about the discrimination issue. *See* Def. Mot. Exh. 1 at 67–76.

with respect to his merit bonus, his annual leave hours, or his ratings. Judge Kessler's conclusions as to those issues have absolutely *no* relevance to any argument regarding whether Watchman's decision upholding the demotion proposal was a product of a discriminatory or retaliatory motive, since his decision was made *after* Judge Kessler issued her rulings.

Further, there is nothing in the record or in plaintiff's pleadings to suggest that Watchman acted with an improper motive in affirming the demotion proposal. Even the jury found that plaintiff had failed in his attack on the demotion proposal, and therefore, there is absolutely no reason to suggest that it was improper for Watchman to reach a similar conclusion. Moreover, as argued by defendant, Watchman was a political appointee who did not start at OSHA until January 1995, long after the demotion had been proposed. He testified that at no time during the decisionmaking process did he speak to the proposing official or his deputy. (Def. Mot. Exh. 1 at 68). Watchman further stated that his decision was based "principally on [plaintiff's] own written expressions rather than Adkins' representations as to [plaintiff's] actions." (Def. Mot. Exh. 8 at 8). Given this unrebutted testimony, there is no reason to impugn Watchman's decision to reaffirm Adkins' demotion proposal.

Nonetheless, plaintiff tries to excuse his failure to present any evidence of discrimination by arguing that the ALJ erroneously refused to allow him to present six unidentified witnesses. The MSPB found that plaintiff had "fail[ed] to timely submit arguments regarding the administrative judge's ruling on his witnesses," and therefore, relying on *Tarpley v. U.S. Postal Service*, 37 M.S.P.R. 579, 581 (1988), the MSPB concluded that plaintiff had failed to preserve his objection to the ALJ's ruling. (Def. Mot. Exh. 10 ¶¶ 11 and 12). The MSPB also concluded that the exclusion of witnesses by the ALJ did not result in any prejudice to plaintiff, since the ALJ's ruling did not preclude the plaintiff from

"presenting evidence of discrimination involving the demotion." *Id.* ¶ 13. This Court agrees with the Board and further notes that even if plaintiff could have presented additional witnesses, they would have been irrelevant to the legal issue before the ALJ—whether plaintiff could prove a prima facie case.

Plaintiff argues that he was prepared to present testimony that Watchman spoke directly to David Zeigler about the facts of the discrimination suit, and that Zeigler had previously concluded that Judge Kessler had been wrong in finding discrimination as to some of plaintiff's claims. (Pl. Response at 7). In fact, Watchman testified during the hearing before the ALJ about the discrimination claim. (Def. Mot. Exhs. 1 at 67–68, 72–76; 10 ¶ 13). He was questioned regarding any conversations he might have had with Ziegler. (Def. Mot. Exh. 1 at 73–5). In his testimony, Watchman stated that he did not recall Ziegler telling him about any factual omissions or errors in Judge Kessler's opinion. (Def. Mot. Exh. 1 at 74). Plaintiff also submitted Ziegler's deposition testimony to the ALJ. Moreover, plaintiff has provided no evidence—either in Ziegler's deposition or otherwise—demonstrating that Ziegler had any discriminatory or retaliatory motive in reaching his opinion regarding the judge's findings. Plaintiff also failed to show that Watchman was otherwise improperly influenced. On the contrary, the evidence is unrebutted that Watchman did not speak to the proposing official (Adkins) or his deputy (Martonik) about the case at all. (Def. Mot. Exh. 1 at 68).

█ Moreover, even assuming *arguendo* that the plaintiff was limited in his ability to present evidence regarding the demotion, plaintiff has failed to identify any evidence that would be relevant to proving a prima facie case that Watchman's demotion decision constituted discrimination. In a discipline case, a plaintiff must demonstrate that he and a similarly situated employee who is not a member of the protected class "were charged with

offenses of comparable seriousness" and that he was treated more harshly or disparately than the similarly situated employee. *See Holbrook,* 196 F.3d at 261. As found by the ALJ, plaintiff has "failed to identify any similarly situated individual not a member of his protected group who received different treatment." (Def. Mot. Exh. 9 at 9). Whether plaintiff could have presented statistical data regarding the number of blacks or foreign nationals in a supervisory position or whether he could have adduced further evidence of conversations involving Ziegler and Watchman would have done nothing to advance his prima facie case, since this evidence does not show that a similarly situated employee was disciplined in a different manner from the plaintiff. Without citation to the record,[4] plaintiff asserts: "Discrimination can also be shown by evidence that the plaintiff has been treated differently than others in his position. This is the exact testimony that the administrative law judge refused to hear." (Pl. Response at 5). However, there is absolutely no basis in the record or in plaintiff's pleadings upon which to credit this bald assertion. On the contrary, plaintiff has not proffered any evidence either at the administrative hearing or on appeal that would serve to prove a prima facie case with respect to the demotion decision.[5] There is thus no legal or factual basis for overturning the MSPB's decision.

## II. Appeal of Merit System Protection Board Decision

■ With respect to those claims that do not involve discrimination, an MSPB decision "must be affirmed unless it is found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." *Hayes v. Dep't of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984). To show that the MSPB's decision is not arbitrary and capricious, defendant needs only to show that the decision has "a rational basis in the law." *Wilder v. Prokop,* 846 F.2d 613, 620 (10th Cir.1988). The "role of the courts in this area of federal employment relations is strictly limited," *Yacovone v. Bolger,* 645 F.2d 1028, 1032 (D.C.Cir.1981), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981), and the MSPB's decision cannot be overturned if it is supported by " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Brewer v. U.S. Postal Service,* 227 Ct.Cl. 276, 647 F.2d 1093, 1095 (1981)(quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

### A. Double Jeopardy

■ Plaintiff challenges the MSPB's decision to uphold the demotion decision as imposing a second punishment for misconduct that was already punished with a 14-day suspension. (Pl. Opp. at 26). In fact, the record demonstrates that plaintiff engaged in two distinct activities, each of which warranted punishment. First, plaintiff was suspended in part for refusing to comply with his supervisor's order to assign Kevin Stevanus to a panel. (Def. Mot. Exh. 2 at 2). He failed to take action on his supervisor's orders and did not indicate that he would do so. *Id.* On Septem-

---

4. Throughout plaintiff's pleadings he claims to be relying on the administrative record but fails to provide any record citations. He has also failed to file a statement of genuine issues setting forth all material facts as to which he contends there exists a genuine issue necessary to be litigated, as required by LCvR 56.1. The Court therefore must treat defendant's Statement of Material Facts as conceded.

5. In his Response at 5, plaintiff refers to the "previous finding of discrimination by the same persons who proposed the plaintiff's demotion." As previously discussed, any prior finding by Judge Kessler has *no* bearing on the demotion decision since her decision did not relate to the proposal to demote or the demotion decision, and second, the jury's finding as to the proposal cannot be relitigated because of the doctrine of res judicata.

ber 23, 1993, after the suspension was proposed on September 17, 1993, plaintiff wrote the letter to his subordinates indicating that he "will not respond to, or implement any dictated unreasonable and unfair managerial practices." (Def. Mot. Exh. 3 at 2). Watchman's decision to demote plaintiff was based on the show of defiance of authority expressed in the September 23, 1993 letter. *Id.* In Watchman's letter, he noted that "it is clear . . . that you intend to refuse to comply with your superiors' orders as long as you are in your present capacity, based on your own interpretation as to when such orders are 'unreasonable and unfair.'" *Id.* It is clear that Watchman's decision to demote plaintiff was based on his September 23 letter rather than his prior refusal to comply with orders, as Watchman specifically found that plaintiff was already suspended for that misconduct and could not be subsequently demoted for the "repeated and deliberate refusal to comply with proper orders." *Id.*

Furthermore, the MSPB properly upheld the determination that writing the memorandum to his subordinates constituted misconduct that warranted demotion. Despite plaintiff's claims that the memorandum "takes no action whatsoever" and "simply advised Dr. Hanna's staff as to his position concerning the disciplinary action being taken against him" (Pl. Opp. at 26), the Court agrees with the MSPB that plaintiff "did more than simply explain the reasons for his suspension." (Def. Mot. Exh. 10 at 4). Rather, plaintiff made a broader statement of general defiance against any orders that he deemed unfair or unreasonable in the future—a statement that encompassed far more than the specific orders he had previously refused to obey. Thus, plaintiff is not being subjected to double punishment for the same misconduct in being demoted after having received a suspension. *See Wigen v. U.S. Postal Service,* 58 M.S.P.R. 381 (1993)(where "two different disciplinary actions were based on different grounds, the appellant's claim of error is without merit").

## B. Whistleblower Protection Act

 Plaintiff further alleges that the demotion was issued "in direct retaliation for Dr. Hanna's disclosure of the gross waste and mismanagement in Dr. Hanna's office as well as Mr Adkins' conflict of interest with respect to the regulatory proceedings concerning exposure to Butadiene." (Pl. Opp. at 32). Under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), "employees with the authority to take personnel actions are forbidden to do so as a result of any disclosure of information by an employee that the employee reasonably believes evidences (i) a violation of law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *Watson v. Department of Justice,* 64 F.3d 1524, 1527 (Fed.Cir.1995). Plaintiff must establish by a preponderance of the evidence that he made a protected disclosure, that subsequent to the disclosure he was subject to disciplinary action, and that the disclosure was a contributing factor to the personnel action taken against him. *Carr v. Social Security Admin.,* 185 F.3d 1318, 1322 (Fed.Cir.1999).

 Plaintiff alleges that the demotion was in reprisal for the following disclosures:

(1) in August 1993, he allegedly told Mr. Adkins' deputy, John Martonik, that Mr. Adkins should withdraw from the decision-making process with regard to the regulatory standard for the chemical butadiene because of a conflict presented by his friendship with an employee of the Goodyear company; and

(2) when he informed David Ziegler, the Director of Administrative Programs for OSHA, that Mr. Adkin[s] illegally preselected Carol Jones for the position formerly occupied by the plaintiff.

(Def. Statement of Facts ¶ 27).[6] However, plaintiff does not contest the fact that Watchman "had no knowledge of Dr. Hanna's alleged disclosures with regard to butadiene or Carol Jones." (Def. Statement of Facts ¶ 31). Nor does plaintiff contest the ALJ's finding that neither the proposing official nor the deciding official had knowledge of plaintiff's alleged disclosures. (Def. Statement of Facts ¶ 32; Def. Mot. Exh. 10 ¶ 14). Because a claim of reprisal for whistleblowing requires that "the accused official knew of the claimant's disclosure," *Stanek v. Department of Transp.*, 805 F.2d 1572, 1580 (Fed.Cir.1986), the MSPB did not err in finding that plaintiff failed to show that his alleged disclosures were a contributing factor in the demotion.

### C. Privacy Act

Plaintiff also claims that an official of the agency, John Martonik, violated the Privacy Act, 5 U.S.C. § 552a, by revealing "the planned disciplinary action to other staff members within the office." (Pl. Opp. at 23). He asserts that "[t]he release of this information about his prior disciplinary action directly contributed to his remo.al by forcing Dr. Hanna to respond to his subordinates." (Pl. Opp. at 25). Thus, plaintiff argues that "the decision to demote him should have been considered in the context of the violation of the Privacy Act." (Pl. Response at 10).

■ The MSPB found that plaintiff failed to raise a Privacy Act argument at the proceedings below and thereby failed to preserve the defense when he appealed to the MSPB. (*See* Def. Mot. Exh. 10 n. 3). Because plaintiff failed to raise the Privacy Act argument until submitting a Brief and Motion to Reconsider after the hearing before the ALJ, the MSPB did not err in refusing to address plaintiff's Privacy Act argument.

■ Even assuming *arguendo* that plaintiff preserved his Privacy Act defense to the demotion, the Court concludes that plaintiff has not demonstrated that the agency committed a violation of the Privacy Act. The Privacy Act permits disclosure of information "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). According to the evidence, the only person with whom Martonik spoke about plaintiff's demotion was Susan Harwood, another supervisor at the agency. (AR Vol. 9, Tab M at Martonik Dep. at 135). Plaintiff argues that Ms. Harwood is not covered by the "need to know" exception because "Ms. Harwood was not within the same office and the agency has presented no evidence in the record that would indicate that Ms. Harwood had a need to know." (Pl. Response at 10). Yet, plaintiff does not dispute that Ms. Harwood was a supervisor at the agency (*see* Def. Mot. Exh. 7 at 10 (plaintiff's supplemental memorandum submitted to Watchman, identifying Harwood as "one of the Directors within the Office of Health Standard Programs")), and he points to no authority limiting the "need to know" exception to disclosure only to officers and employees within a certain office within an agency rather than to officers and employees of the entire agency. For instance, in *Viotti v. U.S. Air Force*, 902 F.Supp. 1331 (D.Colo.1995), the court held "as a matter of law" that the Dean of the Air Force Academy's disclosure to the "officers and staff at the Academy" that he was removing the head of the political science department because he had lost confidence in that individual's leadership of the department was not improper. *Id.* at 1337. Likewise, Ms. Harwood, as an officer in the Office of Health Standards Programs,

---

6. The Court notes that plaintiff made no mention of any whistleblowing allegations during the oral reply before Watchman or in the supplemental memorandum he filed following the oral reply, even though the reply before Watchman took place in 1996, more than two years after the demotion was proposed. (*See, e.g.,* Def. Mot. Exh. 7 (plaintiff's supplemental memorandum to Watchman)). Rather, he mentioned his whistleblowing defense for the first time in the proceedings before the ALJ in 1997. *See* Def. Mot. Exh. 9 at 9.

would be covered by the "need to know" exception as a matter of law.

Furthermore, plaintiff cannot rely on any arguable violation of the Privacy Act to collaterally attack the agency's decision to demote him. *See Pellerin v. Veterans Admin. of U.S. Government*, 790 F.2d 1553, 1555 (11th Cir.1986).[7] Moreover, while plaintiff might have been justified in simply explaining the reasons for his suspension if a violation of the Privacy Act had actually occurred, as discussed above, plaintiff went far beyond a simple explanation by making a general declaration of defiance against all managerial practices he deemed to be unfair or unreasonable. The demotion was based on the misconduct and inappropriate conduct he displayed in making certain statements which were unnecessary to any explanation of the reasons for his suspension. Thus, any conceivable Privacy Act violation would not have shielded plaintiff from the demotion. *See Albright v. United States*, 732 F.2d 181, 190 (D.C.Cir.1984) ("the Privacy Act was not intended to shield ... employees from the vicissitudes of federal personnel management decisions.")

## D. Reasonableness of the Punishment

■ An agency may take an adverse action against an employee "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). "As the case law has developed, courts have framed the 'efficiency of the service' issue in terms of requiring a 'nexus' between ... 'the articulated grounds for an adverse personnel action and either the employee's ability to accomplish his or her duties satisfactorily or some other legitimate governmental interest promoting the 'efficiency of the ser-

vice.' " *Yacovone*, 645 F.2d at 1031 (quoting *Doe v. Hampton*, 566 F.2d 265, 272 (D.C.Cir.1977)(internal quotations omitted)). This requirement has been translated into a three-part test in which the agency must prove by a preponderance of the evidence that (1) the charged conduct occurred; (2) there is a nexus between the conduct and the efficiency of the service; and (3) the penalty imposed is reasonable. *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed.Cir.1997).

■ It is undisputed that the charged conduct occurred. Plaintiff does not deny having written the letter to his subordinates. Although plaintiff claims that he "simply explain[ed] in the memorandum why he is being disciplined" (Pl. Response at 16), he also indicated his intentions as to his future actions by writing, "I will not respond to, or implement any dictated unreasonable and unfair managerial practices." (Def. Mot. Exh. 3 at 2). Plaintiff characterizes this approach to interacting with his superiors as merely a "managerial disagreement." (Def. Mot. Exh. 10 ¶ 5). However, the Court agrees with the MSPB that plaintiff's statement "implied that his superiors conducted [unreasonable and unfair managerial] practices and openly challenged their authority to implement practices with which he disagreed." *Id.* Moreover, the MSPB noted that it has held in the past that "disrespect towards supervisors undermines management's capacity to maintain employee efficiency and discipline." *Id.* As such, the MSPB properly found that misconduct had occurred and that there was a sufficient nexus between that misconduct and the efficiency of the service.[8]

---

7. Plaintiff's reliance on *Johnson v. Department of Treasury*, 7 MSPB 649, 8 M.S.P.R. 170 (1981) is misplaced. In that case, the MSPB did not address whether "a violation of the Privacy Act may constitute a prohibitive personnel practice under 5 U.S.C. § 2302(b)(11) if the violation of the Act was a factor in the taking of a removal action," as plaintiff asserts. (Pl. Opp. at 24). It declined to do so specifically "because it is clear that appel-

lant's allegations concerning a violation are *the result of, rather than a factor in,* the taking of the removal action." *Johnson*, 7 MSPB 649, 8 M.S.P.R. at 178 (emphasis added).

8. Although not framed as such, plaintiff's claim that "the demotion should not be sustained because [his] actions amount to no more than a managerial disagreement" (Pl. Opp. at 27), is essentially an argument that

Plaintiff challenges, however, the reasonableness of the penalty. He argues that the penalty was too harsh given the conditions at the time of the misconduct. (Pl. Opp. at 40–45). He claims that the ALJ failed to consider Judge Kessler's opinion on the issue of mitigation, including "the tensions between the parties," "severe emotional distress," and perceived or actual "pressures of repeated discrimination since 1981." *Id.* at 41, 42. Contrary to plaintiff's assertions, it is clear that Judge Kessler's opinion was fully considered when plaintiff's punishment was determined. This is evident in both Watchman's testimony at the MSPB hearing and in Watchman's decision. At the hearing, Watchman indicated that he "read the judge's decision" in the 1995 case and considered "the relationship" between plaintiff and his employer, "the circumstances of the case, and the potential tensions that might have been there." (Def. Mot. Exh. 1 at 82). When asked if he considered whether plaintiff might have been "justly or unjustly paranoid that he was being retaliated against for the EEO complaints" he had filed, Watchman said that he "considered those circumstances in making a decision, but ultimately ... decided that it did not warrant or excuse the kind of statements that Dr. Hanna made to his staff." *Id.* at 83. In the demotion letter issued to plaintiff, Watchman noted that he gave "full and careful consideration" to the 1995

his demotion does not promote the efficiency of the service. Plaintiff's reliance on *Schofield v. Veterans Admin.*, 7 MSPB 23, 7 M.S.P.R. 94 (1981), to support this argument is misplaced. The situation here is distinguishable from that in *Schofield,* where the MSPB found that an employee's distribution of a memo criticizing his supervisor did not serve as sufficient evidence that his demotion would promote the efficiency of the service. *Id.* at 99. Here, as discussed above, plaintiff did more than merely express his views; he announced to his subordinates his intent to defy orders in the future. Thus, the MSPB's determination that plaintiff's statements to his staff were improper and that the penalty of demotion was reasonable is upheld. (*See* Def. Mot. Exh. 10 ¶¶ 5, 17).

court proceeding, including the jury's findings as well as the court's findings. (Def. Mot. Exh. 8 at 1–2). Importantly, after considering all the factors relevant to plaintiff's demotion, he did in fact mitigate punishment by reducing the demotion to a GS–14 rather than to a GS–13, as proposed. *Id.* at 2.

The ALJ then upheld Watchman's decision, recognizing that Watchman "testified that he was aware of the findings of the court in the appellant's discrimination complaint, and he considered the possible effect of those findings on the appellant's relationship with his supervisors." (Def. Mot. Exh. 9 at 11). The ALJ also found that Watchman gave appropriate consideration to the factors relevant to the analysis of whether a punishment is reasonable, as well as "to the effect of the decision in the appellant's discrimination complaint." *Id.* Subsequently, the MSPB specifically considered "the stress and tension created by [the] work environment" in finding that plaintiff's punishment was reasonable. Given the substantial evidence that the specific circumstances of plaintiff's working conditions and any impact they might have had on plaintiff at the time were taken into consideration at every level of the administrative process, the MSPB's determination that the punishment was reasonable will not be disturbed.[9]

9. Plaintiff's argument that his punishment should be mitigated or eliminated altogether due to the "personal animus of the proposing official and his deputy" is unconvincing. (*See* Pl. Opp. at 21). As discussed above, Watchman was a political appointee who did not work at OSHA until January 1995, long after the demotion was proposed. He testified that at no time during the decisionmaking process did he speak to the proposing official or his deputy (Def. Mot. Exh. 1 at 68), and explained that his decision was based "principally on [plaintiff's] own written expressions rather than Mr. Adkins' representations as to [plaintiff's] actions." (Def. Mot. Exh. 8 at 8). Plaintiff has presented no evidence to suggest that Watchman was biased by any actions on the part of Adkins or Martonik. Therefore, there is no evidence that Watchman's decision was "irrevocably tainted by personal animus."

## CONCLUSION

For the reasons set forth above, the Court grants summary judgment in favor of defendant as to all claims and denies plaintiff's motion for judgment on the pleadings. A separate Order accompanies this Opinion.

(*See* Pl. Opp. at 21) (quoting *Seavello v. Department of Navy*, 4 M.S.P.B. 239, 4 M.S.P.R. 155 (1980)).

Plaintiff also alleges that he was not insubordinate because the order that he supposedly failed to obey did not exist. (Pl. Opp. at 30–32). Because the MSPB upheld the demotion based on plaintiff's September 23, 1993 memorandum and declined to sustain the demotion based on insubordination for refusal to obey an authorized order, plaintiff's argument is irrelevant and need not be addressed. (*See* Def. Mot. at Exh. 10 ¶ 7).