**NOVECON, LTD., et al., Plaintiffs,**

v.

**BULGARIAN-AMERICAN ENTERPRISE FUND, et al., Defendants.**

**Civil Action No. 95–1178–LFO.**

United States District Court,
District of Columbia.

Sept. 24, 1997.

---

Douglas McFadden, McFadden, Shoreman & Tsimpedes, P.C., Washington, DC, for Plaintiffs.

Gary H. Baise, Anson M. Keller, Baise & Miller, P.C., Washington, DC, for Defendants.

## MEMORANDUM

OBERDORFER, District Judge.

An Order dated September 16, 1997 reconsidered defendants' motion for summary judgment and dismissed plaintiff Novecon's defamation claim, plaintiffs' remaining cause of action. This memorandum supplements the accompanying September 16 Memorandums *sua sponte*.

On August 11, 1997, plaintiffs objected to the affidavit of defendant Frank Bauer which referenced but did not disclose the list of recipients of defendants' allegedly defamatory letter. Plaintiffs' objection stated, "Without the names of recipients, plaintiff cannot

adequately respond and this court cannot rule." Pl.'s [sic] Objections to Frank Bauer Aff., at 2 [hereinafter Objections]. Specifically, plaintiffs relied on Rule 56(f) of the Federal Rules of Civil Procedure, which permits a court to deny or stay a motion for summary judgment and order additional discovery if "the party opposing the motion . . . cannot . . . present by affidavit facts essential to justify the party's opposition . . ." *Fed. R. Civ. Pro.* 56(f). The September 16 Memorandum dismissed these objections, citing plaintiffs for their failure to "file[ ] the affidavit contemplated by Federal Rule of Civil Procedure 56(f). . . ." Memorandum. at 5 n. 1.

█ The meaning of Rule 56(f) is plain. It only permits mandated discovery in aid of opposition to summary judgment "[s]hould [the need] appear from the affidavits of the party opposing the motion. . . ." *Fed. R. Civ. Pro.* 56(f). Our Court of Appeals has read this language as an expectation that opposing counsel will file their objections under oath. *See, e.g., Londrigan v. FBI,* 670 F.2d 1164, 1175 (D.C.Cir.1981) ("Counsel for Londrigan complied with the prerequisites for invocation of Rule 56(f) by submitting an affidavit to the District Court explaining why he was unable to offer material in opposition to the FBI's summary judgment motion."). As noted by one commentary, the consequence of ignoring this "prerequisite[ ]" is typically severe:

> [T]he rule will not be liberally applied to aid parties who have been lazy or dilatory. The most obvious indication of lack of diligence is a failure on the part of the non-movant to present affidavits under either subdivision (e) or (f).

10A *Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure* § 2740. at 535 (2d ed.1983) (footnote omitted): *see also Mid–South Grizzlies v. National Football League,* 720 F.2d 772. 780 n. 4 (3d Cir.1983) (listing precedents).

█ By only filing an Objection to defendant Frank Bauer's testimony, plaintiffs have failed to comply with the plain letter of Rule 56(f). Nonetheless the September 16 Memorandum did not acknowledge an exception that this Circuit has carved from the affidavit requirement. In *First Chicago International v. United Exchange Co.,* 836 F.2d 1375, 1380 (D.C.Cir.1988), our Court of Appeals "excused the absence of a Rule 56(f) filing on the grounds that other documents filed by the plaintiff—such as opposing motions and outstanding discovery requests-sufficed to alert the district court of the need for further discovery and thus served as the functional equivalent of an affidavit." Under these particular conditions, a "more flexible approach" to the opposing party's error is warranted. *Id.,*

█ Even so, defendants are entitled to summary judgment on plaintiff Novecon's defamation claim. Plaintiffs' objections to defendant Bauer's affidavit, procedural formalities aside, do not meet the substantive threshold of Rule 56(f): Plaintiffs have failed to establish their inability to "present by affidavit facts essential to justify [their] opposition" to summary judgment. *Fed. R. Civ. Pro.* 56(f). Disclosure of every individual recipient of defendants' allegedly defamatory letter would not create a genuine issue of material fact or alter the judgment on the three common law issues identified in plaintiffs' August 11 Objection—"(1) malice (2) excessiveness of the response [by defendants] (3) and too broad an audience." Objections. at 3.[1]

The substance of plaintiffs' three objections is the same, that additional discovery will reveal the inappropriateness of defendant BAEF's public relations campaign to defend its business reputation. First, plaintiffs sought to prove that the purpose of the letter at issue here was "a malicious character assassination on Novecon," actionable even under the actual malice standard. *Id.* at 4. If potential partners and investors of Novecon were recipients of the letter, plaintiffs contended, there would be evidence that "[t]he obvious intent was not to respond to

---

**1.** This case differs from *First Chicago International* in one important respect. In that case, the district court had granted summary judgment even though "virtually no discovery on the merits had occurred. . . ." *First Chicago Int'l,* 836 F.2d at 1380. Here, the parties have engaged in discovery for close to a year.

[negative publicity about BAEF] but to hurt Novecon[, which] would go to the malice issue." *Id.* at 1.

■ This argument misconstrues the actual malice standard applicable to plaintiffs Novecon and Richard Rahn, who qualify as limited-purpose public figures. *See* September 16 Memorandum, at 5–6; *Novecon, Ltd. v. Bulgarian–American Enter. Fund,* 967 F.Supp. 1382, 1391 (D.D.C.1997). As the Supreme Court has noted, "The phrase 'actual malice' is unfortunately confusing in that it has nothing to do with bad motive or ill will." *Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 667 n. 7, 109 S.Ct. 2678, 2686 n. 7, 105 L.Ed.2d 562 (1989); *see also Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991). To demonstrate actual malice, a claimant must prove that a statement was made

> with "knowledge that it was false or with reckless disregard of whether it was false or not." Mere negligence does not suffice. Rather, the plaintiff must demonstrate that the author "in fact entertained serious doubts as to the truth of his publication," or acted with a "high degree of awareness of ... probable falsity[.]"

*Id.* (citations omitted). Here, plaintiffs have not explained how circumstantial evidence that might shed the slightest light on defendants' motives would create a genuine issue of material fact relevant to the actual malice inquiry. While "it cannot be said that evidence concerning motive ... never bears any relation to the actual malice inquiry." *Harte–Hanks, supra,* at 668, 109 S.Ct. at 2686, the discovery that plaintiffs sought was not as a matter of law "essential to justify [plaintiffs'] opposition" to summary judgment. *Fed. R. Civ. Pro.* 56(f).

■ Second, plaintiffs opposed summary judgment in their August 11 Objections on the grounds that the disclosure of every letter recipient could expose the excessiveness of BAEF's reaction to negative publicity. As plaintiffs were right to observe the common law privilege of defending one's reputation—upon which defendants' summary judgment motion and the September 16 Memorandum relied—is qualified by a rule of reason. "A person replying to an attack may not ... 'indulge[ ] in language that is unnecessarily defamatory.' " *Foretich v. Capital Cities/ABC, Inc.,* 37 F.3d 1541, 1562 (4th Cir. 1994). *quoted in* Objections, at 3.

As an argument against summary judgment, however, plaintiffs' claim is wide of the mark in the circumstances here. The complete text of BAEF's letter, in both Bulgarian and English, has long been available to plaintiffs. (The two versions are otherwise identical except that the Bulgarian version removes the disputed reference to Novecon's contract proposal as "a veritable Brooklyn Bridge of misrepresentation," since the American figure of speech would have been lost on foreign readers.) Plaintiffs could proffer only one suggestion how the list of recipients, as distinguished from the text, might bolster their argument that BAEF's public relations campaign was excessive: "Without the list it is not certain that the letter is identical to all in Bulgaria." Objections, at 2. This conjecture, however, is dwarfed by the weight of the uncontroverted record that all recipients in Bulgaria received exactly the same text. Standing on its own, it is no grounds for denying defendants' motion for summary judgment. *See. e.g., Greenberg v. FDA,* 803 F.2d 1213, 1224 (D.C.Cir.1986) ("if the court-determines that ... discovery would be wholly speculative, relief under Rule 56(f) must be denied").

Third, plaintiffs opposed summary judgment in their August 11 Objections on the basis that BAEF's letter may have reached too broad an audience to constitute a reasonable defense of its reputation. Presumably, the disclosure of a list of actual recipients would bolster plaintiffs claim that "[t]his massive mailing [was] breathtaking in its scope." Pls.' Br. in Opp. to Defs.' Mot. for Summ. J., at 22. Yet this argument likewise is unpersuasive in the face of defendants' grounds for summary judgment. There is, after all, no dispute about the number of letters that BAEF mailed; only the precise identities of the recipients are unknown. Defendants mailing to several hundred addressees must be viewed in light of the negative press coverage BAEF received in Bulgarian

**56**

and international newspapers, reaching tens of thousands of readers. *See* September 16 Memorandum. at 8–9 ("Appraised by a rule of reason, defendants' choice of recipients for its communication ... is sufficient to carry their burden under the common law qualified privilege.").

The potential that defendants' letter might have reached some individual recipients whose opinions of BAEF were unaffected by the negative publicity would not create a genuine issue of material fact. The Bauer, Rollins, and Schiller Affidavits attest to the careful reasoning process by which defendants selected the categories of recipients. Discovery might conceivably disclose some person who was erroneously included in a category. However. as noted in the September 16 Memorandum:

> The common law qualified privilege asserted here does not demand that defendants demonstrate failsafe precision in identifying third parties with a sufficient interest in BAEF's public controversy. As the Restatement persuasively states the proposition:

>> If on an occasion giving rise to a conditional privilege the publisher mistakenly communicates the defamatory matter to some person to whom he is not otherwise privileged to publish it, he is protected if ... he reasonably believes that the person to whom he communicates it is a person whose knowledge of the matter would be useful in the protection of the interest in question.

> *Restatement (Second) of Torts* § 604 cmt. e (1977).

Memorandum, at 8.

As a final matter, the substance of plaintiffs Objections cannot overcome the last grounds for summary judgment discussed in the September 16 Memorandum, that defendants' letter was an "exercise in poetic license ... protected by the First Amendment...." *Id.* at 12. A cause of action for defamation requires first and foremost that the communication in question be false or misleading. Read in their proper and complete context, the charges of deception and "extortion" in defendants' letter amounted to rhetorical hyperbole that is not readily sus-

ceptible to factual verification. See *id.* at 11. Regardless of the precise audience, therefore, no reasonable fact finder could find that defendants' comments were legally defamatory.

For these reasons, plaintiffs' opposition to summary judgment under Rule 56(f) does not disturb the September 16 Order, granting summary judgment for defendants and dismissing the parties remaining claims.