**Maria VELIKONJA, Plaintiff,**

v.

**Robert S. MUELLER, III, Defendant.**

**No. CIV.A.03–0832(ESH).**

United States District Court,
District of Columbia.

April 13, 2004.

---

3. *See* n. 2, *supra.*

John F. Karl, Jr., Nancy J. Malir, Mc-Donald & Karl, Washington, DC, for Plaintiff.

Peter T. Wechsler, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff was employed as an attorney for the Federal Bureau of Investigation (the "FBI" or "Bureau") from January 2000 until she resigned in September 2003. She contends that during her tenure, her employer discriminated against her on the basis of her gender and retaliated against her for protected EEO activities in violation of Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e *et seq.* She also alleges violation of her First Amendment rights, claiming her employer improperly retaliated against her for her vocal advocation of alternative work schedules, and alleges that her employer unlawfully disciplined her based upon documents maintained in violation of the Privacy Act, 5 U.S.C. § 552a *et seq.*

Defendant has moved to dismiss the complaint, arguing that plaintiff has failed to exhaust her administrative remedies for her Title VII claims and that her First Amendment and Privacy Act claims are barred because Title VII provides the exclusive judicial remedy for federal employment discrimination. Defendant also argues that even if the Court finds that plaintiff exhausted her administrative remedies, the FBI is entitled to summary judgment on those claims because it had a legitimate, non-discriminatory basis for the actions it took. As discussed below, defendant's motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff began employment with the Bureau in 1985. In September 1998, while working as a Special Agent in the contract review unit of the Bureau's Finance Division, she submitted a written request to use a flex-time schedule. Her request was granted, and she proceeded to work alternative hours. In January 2000, plaintiff was selected for a position as an Assistant General Counsel/Supervisory Special Agent in the Bureau's National Security Law Unit (NSLU) under a new supervisor, Michael Woods. Although she did not submit a renewed written request for flex-time approval, she continued to work a schedule that deviated from the typical Bureau workday. Plaintiff claims that Mr. Woods expressly approved her use of flex-time (Velikonja July 16, 2002 Dec. at 10–12; Pl.'s Facts ¶ 90) and cites his handwritten notes to support her claim that she was allowed to continue with her flexible schedule when she transferred into the NSLU. (Pl's Facts Ex. B.)

In April and May 2000, Mr. Woods observed discrepancies in the hours plaintiff claimed she worked as compared to the time she was observed actually engaging in work activities. (Def.'s Facts at 9 ¶ 1.) He began closely monitoring plaintiff's arrival and departure times by accessing the electronic building access time logs and comparing them with plaintiff's time entries, and by keeping notes to document his surveillance. (*Id.*) In October 2000, the Bureau's Inspection Division reviewed Mr. Woods' notes and records regarding plaintiff's time and attendance, and the Bureau's Office of Professional Responsibility (OPR) subsequently began an official investigation into plaintiff's time and attendance on November 7, 2000. (Velikonja July 16, 2002 Dec. at 13–14; Pl.'s Facts ¶ 63.)

The next spring, while the OPR investigation was pending, Mr. Woods again no-

ticed what he perceived to be unauthorized absences. For example, plaintiff signed out at 4:30 p.m. on a day when she was allegedly observed leaving the Bureau's Quantico facility at 1:00 p.m. (Def.'s Facts at 11 ¶ 1.) On May 13, 2001, plaintiff was assigned to Temporary Duty in Macedonia, but failed to report back to the NSLU upon her return. (*Id.* at 12 ¶ 2.) Citing plaintiff's alleged "repeated time and attendance discrepancies" and considering "the sensitive nature of the work performed in the NSLU," the Bureau transferred her against her will out of her position at the NSLU into the Procurement Law Unit in the Bureau's Office of General Counsel on July 23, 2001. (*Id.* at 12 ¶ 3.) Then, on July 27, 2001, the Bureau made a second referral to OPR of discrepancies in plaintiff's time and attendance reports, focusing on her temporary duty in Macedonia. (*Id.* at 13 ¶ 2.)

On January 30, 2002, the first OPR investigation was completed. Based on its findings and conclusions, plaintiff was suspended for fourteen days and placed on probation for one year for her alleged time and attendance abuses. (*Id.* at 13 ¶ 5.) Before the second investigation was completed, however, she resigned from the Bureau.

Her complaint contains six counts, including four brought under Title VII. In Count I, she alleges that the OPR investigations subjected her to special scrutiny because of her gender and in retaliation for her involvement in activities protected under Title VII, and in Count II she claims that the investigations were prejudicially delayed, also for discriminatory and retaliatory reasons. In Count III, she alleges disparate discipline, claiming that the suspension and probation resulting from the first investigation were excessive and were imposed because of her gender, and in Count IV, she alleges denial of her

due process rights during the disciplinary proceedings, claiming she was not afforded notice and an opportunity to be heard on the charges brought against her. Plaintiff invokes the First Amendment in Counts V, alleging that her employer retaliated against her for exercising her free speech rights by, *inter alia,* advocating alternative work schedules, and invokes the Privacy Act in Count VI, claiming that the disciplinary action taken against her was based on notes and materials "unlawfully" maintained by her supervisor.

## ANALYSIS

Defendant contends that the Court should dismiss the portion of Count I related to the first OPR investigation for plaintiff's failure to exhaust the administrative remedies available for that claim, and that the remainder of Count I, related to the second OPR investigation, should be dismissed because it does not involve an actionable adverse action. Defendant also argues for dismissal of Counts II, III, and IV for failure to exhaust and of Counts V and VI for failure to state a claim. Finally, defendant seeks summary judgment on plaintiff's Title VII claims because the FBI had a legitimate, nondiscriminatory reason to discipline her.

With respect to a motion to dismiss, under Rule 12(b)(6), dismissal is appropriate only where a defendant has shown " 'beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *In re Swine Flu Immunization Prods. Liab. Litig.,* 880 F.2d 1439, 1442 (D.C.Cir.1989) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The allegations in plaintiff's complaint are presumed true for purposes of a 12(b)(6) motion, and all reasonable factual inferences should be construed in her favor. *Maljack Prods., Inc. v. Motion Picture Ass'n of*

*Am., Inc.,* 52 F.3d 373, 375 (D.C.Cir.1995); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979). If factual matters outside the pleadings are submitted and considered by the court, however, the motion must be treated as one for summary judgment under Fed.R.Civ.P. 56. In such cases, the standard changes from determining "whether a claim for relief has been stated" to determining whether there is a "genuine issue of material fact in dispute" and if "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Under Rule 56, dispute about a material fact is genuine, and should preclude summary judgment, if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In contrast, a moving party is entitled to summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Washington Post Co. v. United States Dep't of Health & Human Servs.,* 865 F.2d 320, 325 (D.C.Cir.1989).

## I. MOTION TO DISMISS

### A. Exhaustion of Title VII claims

 Defendant moves to dismiss plaintiff's Title VII counts on the theory that she failed to exhaust the available administrative remedies before bringing suit. Lodging a timely administrative charge is a prerequisite to filing a Title VII claim in district court. *See Jarrell v. United States Postal Serv.,* 753 F.2d 1088, 1091 (D.C.Cir.1985). An employee complaining of discrimination must consult an Equal Employment Opportunity (EEO) counselor within 45 days of the date of the allegedly discriminatory action in order to try to informally resolve the matter. *See* 29 C.F.R. § 1614.105(a)(1). As a general rule, discrimination claims alleging conduct that occurred more than 45 days prior to the initiation of administrative action are time-barred in a subsequent action before the court. *See Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001); *Valentino v. United States Postal Serv.,* 674 F.2d 56, 65 (D.C.Cir.1982). If EEO counseling does not resolve the matter, the employee must file a formal complaint with the agency within fifteen days of receipt of a notice of her right to file from the EEO counselor upon their last meeting to preserve her right to proceed in court. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(b); *Kizas v. Webster,* 707 F.2d 524, 543 (D.C.Cir.1983).

These procedural requirements governing plaintiff's right to bring a Title VII claim in court are not unimportant. "[I]t is part and parcel of the Congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." *Kizas,* 707 F.2d at 544 (citations omitted). "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." *Brown v. Marsh,* 777 F.2d 8, 14 (D.C.Cir.1985). The deadlines allow an

employer to investigate promptly before evidence becomes stale. *See Del. State College v. Ricks,* 449 U.S. 250, 256–57, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (the Title VII administrative filing requirement protects employers from the burden of defending claims that arise from decisions that were made long ago). Failure to exhaust administrative remedies is, however, an affirmative defense, and the burden is on defendant to prove that plaintiff failed to properly exhaust them. *See Bowden v. United States,* 106 F.3d 433, 437 (D.C.Cir.1997); *Marsh,* 777 F.2d at 13.

■ Plaintiff contacted counselor Lisa Browning on July 25, 2001, alleging gender discrimination relating to her transfer to the Procurement Law Unit effective July 23, 2001, the pending OPR investigation against her, and the threatened second investigation. (Compl. & Ans. ¶¶ 31, 48; Zimmerman Dec. Ex. F.) She filed her formal administrative complaint with the agency on November 6, 2001, within the required fifteen days after receiving a notice of her right to file from an EEO counselor on October 22, 2001. (Compl. & Ans. ¶¶ 30, 38; Zimmerman Dec. Ex. E.) Thus, although plaintiff has successfully exhausted her claim with regard to adverse actions discussed in her administrative complaint that occurred up to 45 days before July 25, 2001, defendant contends that the Bureau's first referral of plaintiff to OPR the year before (on November 7, 2000) was not exhausted and thus cannot form a basis for her "special scrutiny" claim in Count I.[1] (*See* Mot. at 21–23.)

Plaintiff argues that her claim related to the first OPR referral was exhausted because she engaged in an earlier series of EEO counseling sessions initiated on December 4, 2000 (within 45 days of the instigation of the first OPR investigation) to address her concerns that the investigation was motivated by gender discrimination. (Opp. at 21; Comp. & Ans. ¶¶ 29–30.) However, she received a written notice of the right to file an administrative complaint at the conclusion of this series of meetings on December 21, 2000 (*see* Browning Dec. ¶ 7), and she admits that she elected not to file a complaint with the Bureau at that time. (Pl.'s July 16, 2002 Dec. at 13.) For this reason, the EEO officer evaluating the administrative complaint that she later filed refused to consider plaintiff's claim that "she was made the subject of a [November 2000] OPR investigation" on the grounds that it was not timely presented before the agency. (*See* Zimmerman Dec. Ex. J at 3.) Thus, because she failed to file a complaint within fifteen days of her receipt of the notice of the right to file her claim related to the initiation of the first OPR investigation, the claim was not exhausted and cannot constitute part of this suit. *See Koch v. Donaldson,* 260 F.Supp.2d 86, 89 (D.D.C. 2003) (failure to file administrative complaint within fifteen days of final meeting with EEO counselor warrants dismissal).

■ Plaintiff seeks to invoke the doctrine of equitable tolling for her failure to timely file, because she relied upon the representations of her supervisor who indicated that her "explanation was satisfactory" regarding her time and attendance issues and that "the matter was closed." (Pl.'s Facts ¶¶ 60–61; 65.) Although the time limits for administrative exhaustion may be equitably tolled, they are extended "only in extraordinary and carefully circumscribed instances." *Smith v. O'Neill,*

---

1. Defendant does not argue that plaintiff has failed to exhaust her claim with the remainder of Count I, related to the second OPR referral in October 2001, but instead challenges it on the basis that it is not an actionable adverse action because it did not result in disciplinary action. *See infra* Section I(B).

277 F.Supp.2d 12, 17 (D.D.C.2003) (quoting *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C.Cir.1988)). Mr. Woods' indication that there would be no further issue with plaintiff's attendance does not rise to the level of the affirmative misconduct warranting equitable tolling of the deadline with which plaintiff chose not to comply. *See Williams v. Munoz*, 106 F.Supp.2d 40, 43 (D.D.C.2000) (citing *Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752–53 (D.C.Cir.1998) (equitable tolling would be applied if defendant "tricked" plaintiff into allowing the filing deadline to pass); *Jarrell*, 753 F.2d at 1092 (equitable tolling allowed where plaintiff failed to contact an EEO counselor in reliance on the faulty advice of a government official)).

■ Plaintiff also contends that she exhausted the required administrative remedies for the first OPR investigation through an alternative method—by bringing her complaint of disparate surveillance to the attention of her supervisor on July 28, 2000, and thus placing him on notice of her discrimination complaints. This Court, however, recently rejected the argument that a plaintiff's pursuit of her grievances through supervisory channels could excuse her from the applicable administrative exhaustion requirements. *See Carter v. Greenspan*, 304 F.Supp.2d 13, 27 n. 10 (D.D.C. 2004) (citing cases). Moreover, the decision plaintiff cites to support this argument, *Lloyd v. Chao*, 240 F.Supp.2d 1, 4 (D.D.C.2002), is inapplicable because *Lloyd* held that reporting an incident to a supervisor was tantamount to *initiating* contact with an EEO counselor, and did not exempt the plaintiff from filing a relevant administrative complaint.

Finally, plaintiff suggests that, to the extent that her claim related to the first OPR referral, it alleges retaliation for protected activity, and therefore, the doctrine of exhaustion does not apply. This is simply not the case. *See Marshall v. James*, 276 F.Supp.2d 41, 54 (D.D.C.2003) (retaliation claims that arise before plaintiff files an administrative complaint must be exhausted or are barred) (citing cases). Therefore, that portion of Count I that relates to the first OPR referral will be dismissed.

Defendant also argues that Counts II, III, and IV should be dismissed as not exhausted, because plaintiff did not initiate administrative proceedings related to the allegations contained therein. (*See* Mot. at 23–24 (citing *Tyler v. Henderson*, 2001 WL 194930, at *3 (D.D.C.2001), *aff'd*, 21 Fed. Appx. 4, 5 (D.C.Cir.2001) (a complaint may only contain claims that have been administratively exhausted)).) In these counts, plaintiff complains of conduct attributable to the time period *after* she filed her November 6, 2001 formal administrative complaint: the Bureau's failure to complete the OPR investigations of her conduct in a timely manner (Count II);[2] the suspen-

---

**2.** Her claim of prejudicial delay with respect to the first investigation, which began in November 2000 and concluded on January 30, 2002 (Def.'s Facts at 10 ¶ 4; 13 ¶ 5), however, was exhausted as part of the administrative complaint. Plaintiff states that Bureau procedures require OPR investigations to be concluded within 180 days and processed "within a timely manner," claiming that the first investigation should have been concluded no later than May 7, 2001. (Velikonja Feb. 13, 2004 Dec. ¶ 30.) She brought the first OPR investigatory delay to the attention of the EEO counselor (*see* Zimmerman Dec. Ex. F at 3–4), listed it as a grievance in her EEO complaint (*see id.* Ex. E at 4), and the issue was accepted for administrative review. (*See id.* Ex. J at 2.) The *second* OPR investigation began in October 2001, however, and no prejudicial delay in its adjudication had yet arisen when plaintiff filed her administrative complaint in November 2001. Delay of the second OPR referral, therefore, falls within the

sion and probation instituted on January 30, 2002 (Count III); and the Bureau's refusal to provide her with an opportunity to be heard before the institution of the January 30 discipline (Count IV).

The Supreme Court recently clarified that the Title VII exhaustion requirement "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period" even when the acts "are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 105, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Thus, in *Morgan* the Court barred review of discrete discriminatory acts occurring more than 180 days before the plaintiff filed his formal charge with EEOC.[3] Although *Morgan* only barred *prior* acts not covered by the administrative complaint, its broad language has been applied to bar claims arising subsequent to the filing of the administrative complaint. *See Bowie v. Ashcroft,* 283 F.Supp.2d 25, 34 (D.D.C.2003).

In *Bowie,* however, the Court interpreted *Morgan* only to prohibit review of claims that plaintiff presents "for the first time in federal court," holding that subsequent similar acts included in amendments to the EEO charge were exhausted. *Id.* This approach comports with the "purpose of the exhaustion doctrine" to give the "agency notice of a claim and [the] opportunity to handle it internally," *Guerrero v. Univ. of Dist. of Columbia,* 251 F.Supp.2d 13, 21 (D.D.C.2003) (quoting *Marsh,* 777 F.2d at 15), and ensures that only claims

plaintiff has diligently pursued will survive. *See Gustave–Schmidt v. Chao,* 226 F.Supp.2d 191, 203 (D.D.C.2002) (citing *Cristwell v. Veneman,* 224 F.Supp.2d 54 (D.D.C.2000)). While the procedural requirements governing a plaintiff's right to bring a Title VII claim are not unimportant, the exhaustion doctrine was not intended to "become a massive procedural roadblock to access to the courts." *Gustave–Schmidt,* 226 F.Supp.2d at 203 (quoting *Marsh,* 777 F.2d at 14). Therefore, where the ends of administrative exhaustion have been served by the pursuit of administrative remedies with regard to the subsequent acts, separate initiation of administrative exhaustion for related post-complaint conduct is not required.

■ With respect to Counts II and III, the Bureau had a "fair opportunity to provide full redress or to attempt an informal accommodation" *Loe v. Heckler,* 768 F.2d 409, 417–18 (D.C.Cir.1985); *see also Marsh,* 777 F.2d at 15, for the issues presented in these counts were presented by plaintiff by amendment and included among those accepted for investigation during the processing of her administrative complaint. (*See* Zimmerman Dec. Ex. J at 2–3). These counts, therefore, contain claims that must be considered exhausted and cannot be dismissed on this basis. There is no evidence, however, that plaintiff amended her administrative charge to include any allegations of her denial of due process during the disciplinary process as described in Count IV, and thus, this count

---

category of actions occurring after plaintiff filed the formal complaint.

**3.** Although the Title VII claims in *Morgan* were subject to different time limits because the plaintiff was not a federal employee, the principles set forth there have been applied to cases involving the 45–day deadline for federal employees' claims. *See Burkett v. Glick-*

*man,* 327 F.3d 658, 660 (8th Cir.2003); *see also Jarmon v. Powell,* 208 F.Supp.2d 21, 29 (D.D.C.2002) (applying *Morgan* to bar federal employee's claim regarding an earlier failure to promote, even though a later non-promotion claim was timely exhausted, where plaintiff failed to meet with an EEO counselor within 45 days of the earlier non-promotion).

will be dismissed for failure to exhaust the available administrative remedies.

### B. Second OPR referral as adverse action

██ Defendant challenges the remainder of Count I, related to the second OPR investigation initiated on October 15, 2001, by claiming that it does not constitute an actionable adverse employment action giving rise to a Title VII claim. Although actions falling short of an outright firing can be considered adverse, not all personnel decisions with negative consequences for the employee necessarily qualify as adverse actions. To be legally sufficient, the action must have had "materially adverse consequences affecting the terms, conditions, or privileges of [plaintiff's] employment or [plaintiff's] future employment opportunities ...." *Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir.1999); *see also Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). Thus, changes such as demotion, undesirable reassignment, or the loss of a bonus may be sufficiently significant, *see Faragher v. City of Boca Raton,* 524 U.S. 775, 808, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Russell v. Principi,* 257 F.3d 815, 819 (D.C.Cir.2001), but actions imposing purely subjective harms, such as dissatisfaction or humiliation, are not adverse. *See Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C.Cir. 2002); *Childers v. Slater,* 44 F.Supp.2d 8, 19 (D.D.C.1999) ("conduct that sporadically wounds or offends but does not hinder an employee's performance does not rise to the level of adverse action"), *modified on reconsideration,* 197 F.R.D. 185 (D.D.C. 2000); *Jones v. Billington,* 12 F.Supp.2d 1,

13 (D.D.C.1997), *aff'd,* 1998 WL 389101 (D.C.Cir. Jun 30, 1998) ("not everything that makes an employee unhappy is an actionable adverse action").

██ Plaintiff resigned from the Bureau before the conclusion of the second OPR investigation, and thus, no final decision was rendered. A mere investigation into an employee's conduct that does not lead to disciplinary action is not an actionable adverse employment action. *Roney v. Ashcroft,* No. 01–0544, slip op. at 5 n.1 (D.D.C. Aug. 6, 2002); *see also Mack v. Strauss,* 134 F.Supp.2d 103, 114 (D.D.C. 2001), *aff'd,* 2001 WL 1286263 (D.C.Cir. Sept.28, 2001) ("mere investigations by plaintiff's employer cannot constitute an adverse action because they have no adverse effect on plaintiff's employment"); *Moore v. Summers,* 113 F.Supp.2d 5, 23 (D.D.C.2000) ("It is undisputed that no disciplinary action has been taken ... as a result of the investigation. Consequently, there was no adverse action.") (citing *Yerdon v. Henry,* 91 F.3d 370, 378 (2d Cir. 1996)). Therefore, although the discipline imposed as a result of an investigation or the conduct or delay of the investigation may arguably have a sufficient adverse effect on plaintiff's employment to be actionable, these claims are covered by Counts III–IV. The claim in Count I, however, relates only to the Bureau's referral of plaintiff to OPR for an investigation and that claim does not, as a matter of law, rise to the level of an adverse action. Because the claim related to the first OPR referral was not exhausted and the claim regarding the second referral does not constitute an adverse action, Count I will be dismissed in its entirety.

### C. Preemption

#### 1. First Amendment Claim

Plaintiff alleges that the Bureau retaliated against her for the exercise of her First

Amendment rights. (Compl. ¶ 2.) Specifically, she claims that her advocacy of the use of flex-time and flexi-place was a substantial or motivating factor in the adverse actions her employer took against her. (*Id.* ¶¶ 18, 62.) Defendant moves to dismiss this claim on the grounds that as a federal employee, plaintiff may only sue her employer under the Civil Rights Act. Claiming that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment," (Mot. at 26 (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976))), it concludes that plaintiff's First Amendment claims "fall squarely within the ambit of Title VII" and must be dismissed. (Mot. at 26.)

█ Although federal employees may not bring constitutional claims for employment discrimination that is actionable under Title VII, "Title VII does not preclude separate remedies for unconstitutional action other than discrimination based on race, sex, religion, or national origin." *Rottman v. U.S. Coast Guard Academy*, 630 F.Supp. 1123, 1125 (D.Conn.1986) (quoting *White v. GSA*, 652 F.2d 913, 917 (9th Cir.1981)). Indeed, "[n]othing in [*Brown* or Title VII's legislative history] even remotely suggests that Congress intended to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection at all." *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C.Cir.1985). Thus, an adverse employment action taken because of an employee's speech on matters of public concern is independently actionable under the First Amendment. *See Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994) (reviewing federal employee's First Amendment claim

against her employer for alleged retaliation for her exercise of protected speech) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571–72, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

█ Here, plaintiff's claim rests upon alleged retaliation for speech on an issue not related to either her discrimination claim or to protected activities conducted to seek redress for alleged discrimination. Moreover, she complains of adverse actions that are not redressable by Title VII that may form the basis of her protected speech claim, as "even minor forms of retaliation can support a First Amendment claim, for they may have just as much of a chilling effect on speech as more drastic measures." *Smith v. Fruin*, 28 F.3d 646, 649 n. 3 (7th Cir.1994); *see also Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 n. 8, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (the First Amendment protects government employees from "even an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when intended to punish her for exercising her free speech rights"); *Rogers v. Miller*, 57 F.3d 986, 992 (11th Cir.1995) (" 'Adverse employment action' is broadly defined [for First Amendment purposes] and as a matter of law includes not only discharges, but also ... reprimands."); *Tao*, 27 F.3d at 639 ("Employer action taken against an employee in response to her exercise of free speech need not be as significant as the denial of a promotion to raise a constitutional claim.").[4] Therefore, whatever the merits of plaintiff's First Amendment claim (which defendant does not argue at this time), it clearly falls outside the scope of her discrimination claim, and thus, Count V cannot be dismissed as preempted by Title VII.

---

**4.** For example, she alleges that the Bureau refused to give her special assignments, denied her the opportunity to serve on interview panels and refused to allow her to participate in speaking engagements. (Compl. ¶¶ 33, 39, 47.)

### 2. Privacy Act Claim

■ Plaintiff claims that disciplinary action taken against her was based on notes and materials "unlawfully" maintained by Mr. Woods in violation of the Privacy Act. (Compl.¶ 14.) Specifically, she invokes 5 U.S.C. § 552a(e)(5), claiming that her employer's failure to maintain accurate records resulted in an adverse determination against her, and 5 U.S.C. § 552a(e)(2), alleging that her employer failed to obtain information directly from her "to the greatest extent practicable," seeking damages for violation of both sections under 5 U.S.C. § 552a(g)(1)(C)-(D).[5]

Defendant argues that the exclusivity of relief under Title VII applies to plaintiff's claim under the Privacy Act because Title VII "precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation." (Mot. at 30 (quoting *Kizas*, 707 F.2d at 542).) It also claims that it shared the documents regarding plaintiff's time and attendance with OPR pursuant to Privacy Act exceptions providing for the lawful disclosure of information to employees "who have a need for the record in the performance of their duties," 5 U.S.C. § 552a(b)(1), and for "routine use[s] that are compatible with the purpose for which it was collected." 5 U.S.C. §§ 552a(b)(3), 552a(a)(7).

Defendant, however, has failed to cite any cases in which a Privacy Act claim is precluded by Title VII, and the Court is not aware of any.[6] *See, e.g., Tomasello v. Rubin,* 167 F.3d 612, 616–617 (D.C.Cir. 1999) (addressing both Title VII and Privacy Act claims); *Jarrell,* 753 F.2d at 1089 (same). Moreover, although the exceptions that defendant cites may provide a legitimate basis for sharing the information at issue, they do not apply to absolve defendant from any potential liability stemming from its alleged failure to maintain accurate records or to elicit information from her. Plaintiff, therefore, has not failed to state a Privacy Act claim on the basis that Title VII precludes it or that

---

**5.** The Privacy Act "regulates the collection, maintenance, use, and dissemination of information concerning individuals." *Cardamone v. Cohen,* 241 F.3d 520, 524 (6th Cir.2001). Section 552a(e)(2) provides that "[e]ach agency that maintains a system of records shall ... collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." Although the issue of whether section 552a(e)(2) applies to the federal employment relationship is an open question in some circuits, it has been applied in the employment context in this jurisdiction. *See Carton v. Reno,* 310 F.3d 108, 111 (2d Cir.2002) (citing *Waters v. Thornburgh,* 888 F.2d 870, 873 (D.C.Cir.1989) (applying section 552a(e)(2) in the context of federal employment disputes)); *see also Brune v. Internal Revenue Serv.,* 861 F.2d 1284, 1286 (D.C.Cir.1988) (considering plaintiff's claim regarding his employer's investigation of his alleged falsification of time records where the IRS contacted the taxpayers he claimed to have visited without first contacting him). Similarly, sections 552a(e)(5) and 552a(g)(1)(C) create a cause of action for federal employees. *See, e.g., M.K. v. Tenet,* 99 F.Supp.2d 12, 21 (D.D.C.2000) (refusing to dismiss employees' claim based upon adverse actions allegedly taken because of inaccurate information in their personnel files).

**6.** Defendant cites *Hanna v. Herman,* 121 F.Supp.2d 113, 124 (D.D.C.2000), a case in which a former employee appealed a Merit System Protection Board decision and brought a Privacy Act claim related to his demotion and removal. The Court reviewed and dismissed the Privacy Act claim, which was based upon the allegedly inappropriate sharing of information by plaintiff's employer, noting that the information was properly divulged. *Id.* at 123–124. *Hanna* does not support defendant's argument as it is factually distinct and does not involve preemption of the Privacy Act by Title VII.

certain exemptions apply, and the motion to dismiss Count VI will be denied.

## II. SUMMARY JUDGMENT MOTION

Defendant seeks summary judgment on Count III of the complaint, claiming that it had legitimate reasons to investigate and discipline plaintiff.[7] In Count III, plaintiff alleges that she was subject to disparate discipline because of her gender, and thus, the *McDonnell Douglas* three-part "shifting burdens" test applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff has the initial burden of proving a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. Then, the burden shifts to the FBI to articulate a legitimate, nondiscriminatory reason for its actions. *See Bryant v. Brownlee*, 265 F.Supp.2d 52, 67 (D.D.C.2003) (citing *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817). Its burden is only one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If it is successful, the burden shifts back to plaintiff to show that the agency's stated reason was a mere pretext for retaliation. *Id.* (citing *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097). Pretext may be established "by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. The Court may also "consider the evidence establishing the plaintiff's *prima facie* case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (citation and internal quotations omitted). However, "[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. She must show that the explanation given is a phony reason." *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir.1996).

Defendant contends that it was justified in conducting the investigations into plaintiff's time and attendance, issuing the two-week suspension and placing plaintiff on probation for a year because "the record establishes that she repeatedly violated the Bureau's rules and regulations governing time and attendance." (Mot. at 31.) Specifically, defendant claims that plaintiff

> falsified her arrival times by more than one hour per day on average, falsified her departure times by as much as four and a half hours, did not follow her unit's regular work schedule, did not receive authorization to use a flex-time work schedule, routinely took more than double the permissible three-hour credits for exercise time per week, and improperly failed to deduct a half-hour for lunch on two of every three work days.

(Mot. at 31–32.) Defendant cites the OPR report issued in conjunction with her suspension and probation, as well as individual declarations, to substantiate its averments of plaintiff's repeated misconduct.[8]

---

7. Defendant's summary judgment motion appears not to relate to Counts II and IV, where plaintiff alleges that the Bureau conducted the investigations in a discriminatory and retaliatory manner. Of course, plaintiff's complaints regarding the adequacy of the investigations and their protracted course do not constitute claims under Title VII unless she can demonstrate that the alleged deficiencies in the investigations were the product of discriminatory or retaliatory motives. However, on the record before the Court, it is not possible to address the merits of these claims at this time, since they have not yet been briefed by the parties.

8. Contrary to plaintiff's insistence, the OPR report is not hearsay that cannot be considered by the Court in determining whether defendant has met its burden of production. (*See* Opp. at 44 (citing Fed.R.Evid. 803(8)(C)).) Instead, defendant offers the re-

Such evidence is more than sufficient to articulate a legitimate, nondiscriminatory reason for its disciplinary actions.

That is not, however, the end of the inquiry, for after defendant has met its burden of production "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir. 2000). Defendant argues that plaintiff's failure to identify any similarly situated male who was treated more favorably than her not only undermines her ability to demonstrate pretext, but also defeats her attempt to set forth a *prima facie* case.[9] (*See* Reply at 14 (citing *Dickerson*, 238 F.Supp.2d at 77 (plaintiff's failure to identify similarly situated males defeated the establishment of her *prima facie* case as well as "prevent[ed] her from rebutting the legitimate reason [offered] by defendants")).) It is true that plaintiff, although she claims to have presented "material facts in dispute as to whether [she] was treated differently than male FBI agents"

(Opp. at 40), has not set forth specific evidence regarding the similarly situated male agents to which she refers. After responding to defendant's motion, however, plaintiff filed a "Rule 56(f) Motion," contending that defendant's request for summary judgment was premature because plaintiff has yet to complete discovery, and in particular, has yet to conduct any depositions.[10] In the motion, she requests an adequate opportunity to obtain discovery regarding, *inter alia*, other agents who might have been "subject to disciplinary action for time and attendance abuses" or who "committed far more serious offenses than [plaintiff, yet] received lesser penalties." (Rule 56(f) Motion at 21.)

Indeed, parties should be afforded "a reasonable opportunity to complete discovery before grappling with a summary judgment motion." *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C.Cir.1987) (citing *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548 ("any potential problem with ... premature [summary judgment] motions can be adequately dealt with under Rule 56(f), which allows [deferral of] a summary judg-

port because it sets forth the information relied upon in making the decision to discipline plaintiff. Thus, it is not offered for the truth of the statements contained therein, but to demonstrate that the decision makers had legitimate reasons to discipline her, and therefore, it is competent evidence. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) (decision-makers' declarations that co-workers had told them that employee was abusive or unstable were not hearsay in employee's Title VII action because the truth of the statements was not at issue as long as the declarants had a reasonable basis to believe them to be true).

**9.** A plaintiff without direct evidence of discrimination may demonstrate the discriminatory application of discipline by showing that (1) she is a member of a protected class; (2) she was similarly situated to an employee who was not a member of the protected class;

and (3) she was treated differently from the similarly situated employee. *Hanna*, 121 F.Supp.2d at 118 (citing *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C.Cir.1999)); *see also Robinson v. Detroit News, Inc.*, 211 F.Supp.2d 101, 112–13 (D.D.C.2002) (to make out a *prima facie* case, "the plaintiff bears the burden of proving that the male employees were similarly situated and then treated unequally"); *Dickerson v. SecTek, Inc.*, 238 F.Supp.2d 66, 77 (D.D.C.2002) (plaintiff's prima facie case must demonstrate that employer's overtime requirements "applied only to female employees, and not to similarly situated male employees").

**10.** In its opposition to plaintiff's Rule 56(f) Motion, defendant acknowledges that it filed its summary judgment motion prior to the close of discovery and that plaintiff has not yet had the opportunity to conduct depositions. (Opp. to Rule 56(f) Motion at 1, 4.)

ment motion ... if the nonmoving party has not had an opportunity to make full discovery")); *see also Sparrow,* 216 F.3d at 1117 (D.C.Cir.2000) (citing *Bennett v. Schmidt,* 153 F.3d 516, 519 (7th Cir.1998) ("Litigants are entitled to discovery before being put to their proof.")).[11] Typically, a nonmovant requiring further evidence must either seek to compel the necessary discovery or attempt to oppose the motion on the merits at the risk that she might be unsuccessful. *See Crawford v. Signet Bank,* 179 F.3d 926, 927 n. 2 (D.C.Cir.1999) (affirming denial of plaintiffs' motion to extend discovery because they failed to "inform the court when the defendants filed their summary judgment motions that additional facts were needed to oppose the motions, as required by Fed.R.Civ.P. 56(f)").[12] Here, plaintiff chose the latter, and then made a belated request that she be allowed to complete discovery before the Court rules on the motion.

Although plaintiff may not have approached her need for further discovery in a technically proper fashion, granting summary judgment against her before she has had the opportunity to take any depositions would be too extreme a penalty. Instead, under these conditions, a "more flexible approach" to her error is warranted. *Novecon, Ltd. v. Bulgarian–American Enterprise Fund,* 977 F.Supp. 52, 54 (D.D.C.1997), *aff'd,* 190 F.3d 556 (D.C.Cir. 1999) (citing *First Chicago Int'l v. United Exch. Co.,* 836 F.2d 1375, 1380 (D.C.Cir. 1988)) (excusing "the absence of a Rule 56(f) filing on the grounds that other documents filed by the plaintiff—such as opposing motions and outstanding discovery requests—sufficed to alert the district court to the need for further discovery and thus served as the functional equivalent of an affidavit").[13] Because it is unclear based on the undeveloped record whether plaintiff will be able to proffer evidence of similarly situated individuals or otherwise demonstrate disparate discipline, summary judgment on Count III is premature.[14]

---

11. Moreover, "[w]hile it is certainly true that a Title VII *prima facie* case must, in this Circuit, be based on a demanding standard of near identity between the plaintiff's situation and the situation of the person to whom she compares herself to, it does not follow that a Title VII plaintiff must meet this standard as a condition of securing discovery." *Waters v. U.S. Capitol Police Bd.,* 216 F.R.D. 153, 158 (D.D.C.2003); *see also Sparrow,* 216 F.3d at 1114 (a plaintiff need not "make out a *prima facie* case of discrimination in his complaint, [or] specifically point to similarly situated employees who were given preferential treatment over him"). Here, plaintiff has pled facts sufficient to sustain her disparate discipline claim by alleging that female agents "are subjected to special scrutiny of the hours they work" (Compl.¶ 51), that "there exists a double standard of discipline at the FBI that operates to discriminate against female agents" (*id.* ¶ 57) and that Bureau "officials are not disciplined for serious offenses" (*id.* ¶ 58), while she was selectively subject to "[d]isciplinary action for time and attendance issues ... for unlawful, discriminatory and/or

arbitrary reasons." (Velikonja Feb. 13, 2004 Dec. ¶ 5.)

12. Rule 56(f) provides that "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

13. Plaintiff brought her discovery needs to the Court's attention in her opposition to the summary judgment motion by "submit[ting] that she is entitled to discovery as to FBI's treatment of similar offenses and whether agents who committed serious offenses were penalized with a fourteen-day suspension at all, or whether they received lesser sentence." (Opp. at 48.)

14. Because the Court will not grant summary judgment to defendant at this time, plaintiff

Moreover, although defendant may well have been justified in disciplining plaintiff, this does not address plaintiff's allegations of discriminatory delay in completing the investigations of her conduct (Count II), and thus summary judgment is inappropriate on that claim as well. Therefore, although defendant may well be entitled to summary judgment, the Court must defer ruling on its motion, denying it without prejudice. Defendant may renew the motion after the completion of discovery.

Finally, plaintiff claims that summary judgment is inappropriate because she has raised disputed issues of fact regarding the accuracy defendant's reasons for disciplining her.[15] It is impossible, given the posture of the litigation at present, to conclude whether these issues are material to plaintiff's claim. However, it is important to note that plaintiff's case may not turn on the accuracy of the allegations against her that led to her discipline, for "[o]nce the employer has articulated a non-discriminatory explanation for its action, ... the issue is not the correctness or desireability of the reasons offered but whether the employer honestly believes in the reasons it offers." *Fischbach*, 86 F.3d at 1183; *see also Crockett v. Richardson*, 127 F.Supp.2d 40, 47 (D.D.C.2001), *aff'd sub nom., Crockett v. Abraham*, 284 F.3d 131 (D.C.Cir.2002) ("It is not this court's job to decide if defendant's proffered reasons were wise, fair, or correct, but rather, whether defendant honestly believed those reasons and acted in good faith upon those beliefs."); *Waterhouse v. Dist. of Columbia*, 124 F.Supp.2d 1, 10 (D.D.C.2000), *aff'd*, 298 F.3d 989 (D.C.Cir.2002) ("Whether plaintiff was solely responsible for the delays and deficiencies of which defendants complain, or whether she can explain or justify them, is not the issue. The issue is whether defendants reasonably believed that plaintiff had performance deficiencies ....") (citing *Gleklen v. Democratic Congressional Campaign Comm.*, 199 F.3d 1365, 1369 (D.C.Cir.2000)). Plaintiff will have to do more than dispute the underlying bases for her discipline in order to show that FBI's reason is "phony"—she will have to demonstrate that the decision makers did not rely in good faith upon the reasons given for her discipline. *See Fischbach*, 86 F.3d at 1183.[16]

will have the opportunity to continue with discovery, and thus, her "Rule 56(f) Motion" will be denied as moot. Because there is no Motion to Compel discovery currently before the Court, it is premature to determine what discovery plaintiff is entitled to.

15. For example, plaintiff justifies her deviation from the expected "basic workweek of five eight-hour days a week" spanning from "9:00 a.m. to 5:30 p.m. each workday" (Def.'s Facts at 2 ¶¶ 1, 2) by stating that she was "approved for flex-time and work at home by her supervisor." (Pl.'s Facts ¶ 14; Pl.'s Ex. B.) She acknowledges that she did not submit a written request relating to her position at the NSLU as required by FBI policy, but states that her supervisor and a human resources specialist both assured her on multiple occasions that she could continue on the flex-time schedule at the NSLU without written approval or documentation of the schedule (Velikonja Feb. 13, 2004 Dec. ¶ 13; Pl.'s Facts ¶¶ 37, 38, 56; Zimmerman Dec. Ex. C at 3), and offers handwritten notes by her supervisor that she contends indicate the approval of her flexible schedule at the NSLU. (Pl.s' Ex. B.) There seems to be, therefore, a factual issue as to whether Ms. Velikonja received authorization to use a flex-time work schedule. Moreover, plaintiff addresses the perceived discrepancies between her recorded time worked and her apparent attendance, offering justifications that create factual issues as to whether she was indeed working an insufficient number of hours.

16. In a related vein, plaintiff cannot rely solely on the fact that those investigating her failed to seek her explanation regarding her conduct, because the Court will not "infer a discriminatory or retaliatory intent from the alleged 'flaws' in the investigation" leading to

## CONCLUSION

Because plaintiff failed to exhaust her administrative remedies with respect to the first OPR referral, and does not state a claim with respect to the second referral, Count I of her complaint will be dismissed. Count IV will also be dismissed for failure to exhaust. However, defendant has failed to demonstrate that plaintiff did not exhaust the available administrative remedies for Counts II and III, or that Title VII precludes plaintiff's First Amendment and Privacy Act claims, and thus, the Court cannot dismiss these counts. Moreover, plaintiff has not had the opportunity to complete discovery, and thus, her failure to proffer evidence of similarly situated employees will be excused, precluding summary judgment on Count III. Therefore, defendant's motion will be granted in part and denied in part. A separate Order accompanies this Memorandum Opinion.

### *ORDER*

For the reasons provided in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's Motion to Dismiss or in the Alternative for Summary Judgment [14–1] is **GRANTED IN PART AND DENIED IN PART**; it is

**FURTHER ORDERED** that Counts I and IV of the Complaint are **DISMISSED**; and it is

**FURTHER ORDERED** that Plaintiff's Rule 56(f) Motion [33–1] is **DENIED AS MOOT**.

**SO ORDERED.**

plaintiff's discipline. *Laboy v. O'Neill*, 180 F.Supp.2d 18, 28 (D.D.C.2001).